HAMITER, Justice.
 

 In this redhibitory action, involving real property sold by defendant to plaintiff and identified as Nos. 2804-06 Canal Street in the City of New Orleans, the district court ordered a rescission of the sale and condemned defendant to return the purchase price and to pay certain damages.
 

 From the judgment defendant obtained and perfected the instant appeal. Plaintiff answered it, praying for an increase in the damage award. Later, defendant died; and, through appropriate proceedings in this court, there was substituted for him Mrs. Anna Collins Peres, his surviving spouse in community and the administratrix of his succession, and also Mrs. Julie Peres Wicker, his sole heir at law.
 

 The record discloses that in April, 1945 the defendant acquired from one Henry J. Ritayik a lot of ground in the City of New Orleans located at the corner of Canal' and White Streets, together with the improvements thereon. Included was a two-story frame house, facing Canal Street and bearing Municipal Nos. 2804-06, the portion of the lot on which it was situated being 23.61' wide and 88' deep and commencing a distance of 36.31' from the White Street corner.
 

 After his acquisition. defendant entered into a contract with Emery Jee, a building contractor who had previously performed construction work for him, to raise and renovate the mentioned frame house, and construct beneath it basement quarters with a concrete floor to be used for business purposes. While the raising was in progress, during the early part of September, 1945, defendant decided to completely demolish the house and to erect in its place and stead a two-story brick building having dimensions of approximately 23' x 88'. Jee offered no objection to the decision, and the original contract was cancelled and settlement thereunder made. Then followed another contract under which Jee bound himself to tear down the frame house, with all salvaged material becoming his property, and to construct for defendant the desired brick-building.
 

 Formal plans for the new structure were required by defendant, arid for the preparation of them Jee recommended and referred to him one Robert McCullough,. an architect. On being employed McCullough prepared the plans, later receiving therefor the sum of $250. Based on these plans Jee, on October 2, 1945, typed and submitted to defendant appropriate specifications; and shortly thereafter he commenced work under the new contract. No one obtained a permit, required by ordinances of the City of New Orleans, for the erection of the building.
 

 
 *855
 
 When the structure was almost finished a crack developed in its front wall, and the city architect (a Mr. Daunis who then also supervised the issuance of building permits by the Chief Permit Clerk, but who later died) appeared on the scene to investigate it. The record does not disclose who requested his appearence; both Jee and defendant denied that they summoned him. Nevertheless, the official made suggestions for remedying the defect, which were followed, these being to place additional support beneath the front corners-of the building and to tie the front wall to the side walls with iron bolts.
 

 ! Defendant moved a portion of his business into the new building upon its completion about the first of March, 19'46; and he continued operating there until May, 1947 when the structure, together with the ground on which it was situated (measuring 23.6Tx88'), was sold to plaintiff for a recited cash consideration of $26,100-,
 

 In conjunction with his purchase plaintiff granted to Strubac Company, Inc., a five year lease on the property (with certain options for renewal) at $250 per month. After lessee’s occupancy of approximately a year, dampness was observed on portions of the building’s inside, upper walls. The condition, to which plaintiff’s attention was directed, was considered inconsequential and was immediately rectified.
 

 In .the latter part of 1949 plaintiff was given notice of a crack existing in the brick and plaster of one of the walls. Upon examination, he concluded that it was due to a settling of the building; apd he promised the lessee that remedial work would be performed shortly after the Christmas and New Year holiday season.
 

 In January, 1950, before such work was commenced, the lessee’s manager became greatly concerned about the condition of the building and he complained in writing to the City of New Orleans. As a result the city’s chief building inspector addressed to plaintiff a notice, of date February 1, 1950, stating that the building was in a dangerous and hazardous condition and demanding that it be either substantially repaired or demolished.
 

 Thereupon, plaintiff employed an architect, a Mr. E. B. Mason, to make a thorough investigation of the building. Following completion of the investigation, during the' early part of March, 1950, Mr. Mason submitted to plaintiff a voluminous report, accompanied by a blue print and various photographs, in which he listed many basic defects found, including a lack of an adequate foundation and an improper construction of the roof. In view of the numerous and serious vices noted he was of the belief that an attempt to repair the building would be impracticable.
 

 After receiving the architect’s report, as well as several notices from the city building inspector, plaintiff decided to seek a rescission of the sale. Accordingly, his attorney addressed a letter, of date April 20, 1950, to defendant’s attorney in which a re
 
 *857
 
 turn of the property was proposed. To it defendant made no reply.
 

 The instant redhibitory action was instituted on June 23, 1950. While it was pending in the district court a portion of the roof of the building in question collapsed; also, this plaintiff was compelled, by a decree rendered in a separate condemnation proceeding brought by the City of New Orleans, to demolish the structure. Then followed a trial of this cause, resulting in the judgment in plaintiff’s favor (hereinabove described) from which the defendant perfected the present appeal.
 

 It can not be denied that the building sold by defendant to plaintiff was defective within the intendment and contemplation of the civil láw" doctrine of redhibition enunciated in LSA-Civil Code Articles 2520 through 2548. The structure, as is conclusively shown by the evidence, was without an adequate foundation — a latent defect which unquestionably would have precluded the sale had the purchaser known of it. Therefore, plaintiff is entitled to some relief herein provided that his action was timely brought.
 

 Pointing out that the sale occurred in May, 1947, and that this suit was not filed atntil June 23, 1950, defense counsel maintain that the demand of plaintiff is barred by the limitation rule (which is specially pleaded) contained in LSA-Civil Code Article 2534, it being that “The redhibitory ■action must be instituted within a year, at the farthest, commencing from the date of the sale.”
 

 Countering, counsel for plaintiff take the position that appropriate here is the recognized exception to such rule, it being that the “limitation does not apply where the seller had knowledge of the vice tmd neglected to declare it to the purchaser”, second paragraph of LSA-Civil Code Article 2534, in which case “the action for redhibition may be commenced at any time, provided a year has not elapsed since the discovery of the vice”, LSA-Civil Code Article 2546. And they say, in this connection, that the evidence establishes knowledge of the building’s defectiveness at the time of the sale on the part of defendant and, hence, plaintiff’s institution of this suit within a year after he discovered the vice was timely.
 

 For the mentioned exception to. be applicable it is not necessary that the seller have actual knowledge. . Under certain circumstances, according to our well settled jurisprudence, there can be an imputed or a 'presumptive knowledge which satisfies the codal requirement. Thus, the artisan, craftsman, builder, or manufacturer is presumed to know of the vices or defects in the article constructed, manufactured or built by him. Templeman Brothers Lumber Co., Inc., v. Fairbanks Morse & Co., 129 La. 983, 57 So. 309 and Tuminello v. Mawby, 220 La. 733, 57 So.2d 666.
 

 Invoking this jurisprudence plaintiff’s counsel argue that even .if the 'defendant
 
 *859
 
 did not have actual knowledge (they insist that he did) of the building’s defects, particularly the lack of an adequate foundation, he is presumed to have known of them because he gave orders respecting and he supervised the construction, the sor called independent contractor Jee having been no more than his foreman or employee.
 

 To prove such knowledge on the part of defendant plaintiff offered, and he relies primarily on, the testimony of Jee which in substance is as stated in this paragraph. In connection with the original contract to raise the frame house and to construct basement quarters, he laid a continuous concrete floor or slab (approximately
 
 5y2"
 
 thick), the area of it having been somewhat larger than that of the house for the reason that the erection of protruding sheds (about
 
 4'
 
 wide) along the sides was intended. Following the cancellation of the original contract and the confection of the new one he submitted to defendant typewritten specifications for the proposed brick building which he had drafted pursuant to the plans prepared by the architect McCullough. These called'for, among other things, the laying of a continuous foundation or footing (as support for the walls) 8" thick and
 
 2'
 
 wide. After reading the specifications defendant ordered the elimination of certain listed items, particularly the foundation or footing with reference to which he remarked that the concrete slab was already in place and it would suffice. to quote Jee: “* * * He comes to me with his proposal and Mr. Peres says with his pencil, ‘scratch that off, that’s there already, you can’t charge me for that.’ He shoves the paper in my hand and I re-write ■ it that way, the way he wants it. Mind you, I am in debt already for the building, before, you see. In other words, I have to do like the man tells me to do. That’s why I said that I was a sort of a foreman or an overseer, or whatever you might call it. When things like that come up, you are relieved of being a contractor and are demoted to something else, I don’t know what to call it.” Jee’s further testimony is that after submission of the re-written or second set of specifications, which did not list the foundation, he proceeded to construct the brick building in accordance therewith.
 

 The testimony of the defendant, on the other hand, is emphatic and to the effect that he at no time “took over” the supervision of the construction and he did not instruct Jee to eliminate the continuous foundation called for by the plans and specifications. Although he often visited the building site when travelling between his home and office, he had had practically no experience in construction work and he left the project entirely in the hands of Jee, believing that the plans and specifications would be and were followed. The latter seemed to him to be fully capable and was trusted, having a short while before satisfactorily completed for him two small
 
 *861
 
 stores. According to defendant the' city-architect appeared on the job, in connection with the crack that developed in the front wall during the course of construction, representing the City of New Orleans; and the official assured him that such difficulty could and would be rectified. In the building about the first' of March, 1946, soon after its completion, he staged a public display of certain articles handled in his business, and hundreds of persons attended arid viewed it. Thereafter, until the sale to plaintiff in May, 1947, the structure was used- for the conducting of his business, and in it he and various members of his family worked and visited. Had he thought the building improperly constructed and unsound, defendant further said, such use of it would not have been made.
 

 Tending to corroborate the mentioned testimony of the defendant and to refute many of Jee’s sworn statements is certain documentary evidence. Introduced by the defendant, and contained in the record, are the typewritten specifications which, according to Jee, constituted the redrafted or second set and were used for the construction. They are dated October 2, 1945 and, at the conclusion thereof, carry the signature of Emery Jee, it appearing immediately following the recitation: “For your protection we carry Workmen’s Compensation and Public Liability.”
 

 Near the beginning of .these specifications is to be found a provision (which Jee testified had been eliminated or “scratched off”) reading: “Foundations: There will be a footing 8” thick and 2' wide, running continuous to receive walls.” When confronted with this provision he continued to insist that defendant had required him to omit the foundation in order to save money. However, the specifications (of date October 2, 1945,) also recite that Jee would be paid under the contract the total sum of $10,400, it to be given to him in installments commencing on the tenth day of labor and ending on the completion of the job; and the evidence conclusively shows that Jee received from defendant a series of eleven checks totaling $10,400, the first of which was dated October 12, 1945 and the last one April 3, 1946 (the building was completed about March 1, 1946). Considering that the quoted price included the installation of a suitable foundation, it does not seem reasonable that defendant would have paid the full amount thereof if he had required the elimination of that item in order to save money. Particularly is this so in view of the fact that the inadequate concrete slab, which alone supported the walls, was built in connection with the original contract to raise the frame house (as testified by Jee) ; and, further, since the building specifica^ tions contain this provision; “Note: Payments received on original contract will be terminated. Payments received on original contract shall not be regarded as payments on this contract.”
 

 From the record as made Up we are unable to conclude that defendant pos
 
 *863
 
 •sessed actual knowledge of the latent defects' contained in the building or that he is presumed to- have known of them because of an alleged principal-agent relationship had with the builder Jee. ' The testimony of Jee, on which plaintiff primarily relies as before shown, is in many respects contradictory, confusing and discredited by the documentary evidence; and, hence,' it does not effectively overcome defendant’s emphatic denial óf knowledge and of a relationship' with' Je.e as contended for by plaintiff. That his testimony is not satisfactory was" recognized by the district judge and' by plaintiff’s counsel when, in replying to an objection by defense counsel to questions propounded to Jee on redirect examination, they commented:
 

 “By the Court: I am letting him go into this for the reason that it now turns out that what he is doing is justifying the manner in which he built the building. His testimony is very important and I am willing to let him go into it.
 

 “By Mr. Weinstein: Also, I submit that his testimony is quite contrary to what it was the first time, and also, he is a hostile witness. The testimony on cross-examination indicates that.”
 

 We are-inclined to agree that Jee was a hostile' witness — hostile to both of the litigants. From a reading of his entire testimony it appears that he was mainly interested in exonerating himself from any blame for'the faulty construction. He éven expressed the belief that there was nothing wrong structurally or otherwise with the building when he delivered it to defendant* notwithstanding that the architects agreed that the slab on which it rested was without effect as a foundation. As a result it can not be correctly said that he was a disinterested witness.
 

 We do not understand that the trial' judge resolved the conflict existing between-the testimony of Jee and that of the defendant and found as a fact that the latter had' knowledge of the defective condition. In rendering judgment in plaintiff’s favor he; gave as his reasons the following:
 

 “Defendant knew or should have known he should have obtained a permit from and submitted adequate plans, and specifications to the proper authorities of the City of New Orleans for examination and inspection. He argues, that his failure to obtain a building permit is of no importance. The Court is compelled to disagree, with him. The-building code was adopted and ordained to protect the interests and safety of' the citizens of New Orleans; and for everyone to disregard it, as defendant has done, would lead only to chaos and disaster.
 

 “Had an application for a permit been made, accompanied by suitable plans and specifications, the court is. convinced that' the City' authorities would never'have allowed this building-to be erected in the mariner in which it;
 
 *865
 
 was built, because" the proper authorities of the City would have been put upon notice and would have had an opportunity to inspect the foundations and the building during its construction.
 

 “When the defendant acted as he did he violated the law in erecting this unsafe building, and -in the court’s opinion was guilty of fraud within the meaning of the Civil Law.
 

 “The evidence shows that plaintiff was an innocent purchaser, and that the great majority of the defects in the " building were latent and hidden.
 

 “Now as between the plaintiff and the defendant, where do the equities lie?
 

 “The Court is of the opinion that plaintiff’s failure to make a complete and thorough inspection' of the building and its foundations before agreeing to buy, does not alter his status as an innocent purchaser; and that buying, as he did, directly from the person who caused the building to be erected, not only the law but all the equities are in favor of the plaintiff, and it is the duty of the Court to place this innocent plaintiff in a position as nearly .as possible the same as before he purchased.”
 

 From the quoted written reasons it seems that the trial judge’s decision was influenced principally by what he considered to be the equities of the case and by the defendant’s failure to obtain the building permit.
 

 But equitable considerations cannot be permitted to prevail when in conflict with positive written law. LSA-Civil Code Article 21; Federal Land Bank v. Rester, 164 La. 926, 114 So. 839; Packard Florida Motors Co. v. Malone, 208 La. 1058, 24 So.2d 75; Wier v. Glassell, 216 La. 828, 44 So.2d 882. Assuming arguendo that there are certain equities of this case which favor plaintiff, they are not to be considered for the reason that the law specifically limits the redhibitory action to one year from the date of the sale unless the seller had knowledge of the vice, in which event the period runs from the time of the vice’s discovery by the purchaser. Therefore, requiring determination here is the issue of knowledge, and it is to be decided solely on the basis of the evidence relating thereto.
 

 ’ With reference to the failure to obtain a building permit, as required by the city ordinances, that of itself does not constitute a latent defect within the meaning of the codal articles respecting redhibition. Obviously, a purchaser of a structurally and otherwise sound building could not obtain a rescission of the sale thereof merely because the vendor, who erected it, failed to obtain a permit. Furthermore, if such a failure were a defect, it would not be a latent one. By a simple examination of the files in the proper city office the question of whether or "not a permit had issued could be determined.
 

 
 *867
 
 Of course, a violation of law was committed
 
 by
 
 some one when the instant building was constructed without a permit. But we do not agree that the failure to obtain it necessarily rendered this defendant guilty of fraud. In this connection defendant testified that he believed that the contractor Jee or the architect McCullough had secured the required authorization; and for entertaining such a belief the record discloses some justification. Before the building was completed the city architect (under whose supervision permits were then issued) appeared at the site and assured defendant that the crack in the front wall could and would be corrected. Again, Jee himself testified that for several of his subsequent construction jobs he had obtained the permits. Also, it is noted that in the report furnished by the architect Mason to plaintiff, respecting the repair and altering' of the defective building, is to be found a provision reading: “All permits, including building permit, to be paid for by contractor.”
 

 Since this action was not instituted within a year from the date of the sale of the property involved, and it cannot be concluded from the evidence that defendant had actual or presumptive knowledge of the building’s defective condition, the prescription specially pleaded in bar of plaintiff’s demand must be maintained.
 

 For the reasons assigned the judgment appealed from is annulled and set aside, and it is now ordered, adjudged and decreed that defendant’s plea of prescription of one year be sustained and that plaintiff’s suit be dismissed at his costs.