McBRIDE, Judge.
This appeal was taken by plaintiff from a judgment below maintaining a plea of prescription of one year, and alternatively of 10 years, interposed by defendant against a suit filed by plaintiff on November 17, 1965. Plaintiff seeks recovery of some $47,000 as damages from defendant (who is the successor of Plastoid Products Co., Inc.), which furnished the caulking compound used by plaintiff to fulfill his subcontract with Pittman Construction Company, the prime contractor, to furnish and install the caulking on the Desire Street Housing Project owned by Housing Authority of New Orleans.
Plaintiffs petition sets forth his successful bid for the subcontract in 1953; that the plans and specifications for the caulking work provided for a certain quality of caulking; that plaintiff as subcontractor was also obligated to guarantee that all materials furnished for use on his subcontract job would be “in compliance” with samples and certified statements; that plaintiff obtained from defendant’s predecessor “test results” of the caulking compound; that Plastoid Products Co., Inc., delivered a gallon sample of the compound to plaintiff advising that it “stays pliable underneath”; that plaintiff “guaranteed” to the contractor that the caulking compound complied with the specifications; that the architects for the construction project approved the compound; that plaintiff soon afterward commenced his caulking job and ultimately completed the work; that about January 26, 1955, plaintiff was notified by the architects for the Housing Authority that the “caulking used is pulling away from wood, brick, aluminum and iron and does not appear to be elastic underneath” ; that Plastoid Products Co., Inc., was advised of said complaint; that there has never been any charge that plaintiff’s workmanship was not at fault; that demand was then made upon plaintiff by the general contractor for the recaulking of the entire project and on March 9, 1955, Plastoid Products Co., Inc., was notified to that effect; that on November 15, 1955, Pittman Construction Company, the general contractor, filed suit against the Housing Authority for the alleged amount due for work and materials furnished on the project; that the Housing Authority resisted Pittman’s demands and reconvened for unfinished and remedial work; that Pittman Construction Company thereupon filed a third party demand against plaintiff and his surety for the costs of correcting plaintiff’s work; that on November 27, 1956, Plastoid Products Co., Inc., was informed of the third party demand against plaintiff; that after a protracted trial, which ended June 1, 1960, the trial court rendered judgment on the third party demand in favor of Pittman Construction Company against plaintiff in the total sum of $16,994.42 because of plaintiff’s defective caulking work, the court, being of the opinion that the badness of the work was caused by the inferior quality of the caulking compound; that ultimately the Court of Appeal, Fourth Circuit, on November 2, 1964, (Pittman Construction Co. v. Housing Authority of New Orleans, 169 So.2d 122), affirmed Pittman’s judgment against plaintiff holding that the caulking had deteriorated because the compound used did not comply with the specifications; that the Supreme Court on February 5, 1965, (Pittman Construction Co. v. Board of Levee Commissioners etc., 247 La. 345, 170 So.2d 865), denied certiorari; that thereupon plaintiff was compelled to pay Pittman Construction Company the amount of the judgment. Petitioner prays for judgment for the amount paid Pittman, plus damages against the defendant as the successor of Plastoid Products Co., Inc.
Nowhere in the petition is it alleged that the relationship of vendor and vendee existed between Plastoid Products Co., Inc., and plaintiff. But we can fairly deduce from his allegations that plaintiff purchased *211 from Plastoid Products Co., Inc., the quantity of caulking compound necessary for plaintiff’s subcontract work which proved to be of bad quality causing the condemnation of plaintiff’s job and his ensuing loss. Our deduction is supported by this allegation in the petition: “The defendant is therefore, by its warranties, obligated to indemnify your petitioner.” (Emphasis ours).
In their very lengthy briefs and in oral argument counsel for plaintiff contend that plaintiff’s demand does not arise out of any sales transaction with defendant, but is one for “indemnity”, and they point to the caption on plaintiff’s petition “Petition for Indemnity”. While it is true C.C.P. art. 853 provides that every pleading shall contain a caption setting forth the name of the court, the title and number of the action and a designation of the pleading, the character of a pleading is not controlled by its title. Rather its nature is determined by its purpose and averments. Jefferson v. Jefferson, 246 La. 1, 163 So.2d 74 and many other cases. Under Louisiana law perhaps a voluntary obligation to indemnify another against loss from the obligor’s act may be made and is valid. In the instant case, however, there are no allegations whatever or even any intimation that there ever was an agreement of indemnity by defendant in favor of plaintiff covering the loss plaintiff alleges he sustained. Plaintiff’s counsel seem to concede there was no such agreement for we find in briefs and argument the contention that there was a sort of implied obligation of indemnity. They term the relationship between the parties as “hybrid”. They say:
“ * * * the hybrid legal relationships of today were beyond the realm of imagination of the codifiers of our Code. The instant situation demonstrates precisely why the principle of indemnity has become so well fixed in our jurisprudence. In fact, by its repeated judicial interpretations, it was designed to place justice paramount to mere technicalities. Indemnity, it might be said, has become an indispensable substantive right in the growing complexities of modern business.”
The point is then sought to be made that whereas plaintiff has a “right of indemnification” against defendant the cause of action therefor did not arise until Pittman’s judgment against plaintiff became final on February 5, 1965 and that as the suit was timely filed there is no accrued prescriptive period applicable to the action.
We know of no law under which it can be said there was an implied contract of indemnity between the parties. The instant suit is nothing more or less than a demand for damages caused by a breach of the warranty in a contract of sale and is to be regarded as founded upon redhibition and subject to the codal prescription of one year as applied to redhibitory actions. R.C.C. art. 2520, et seq.; Rapides Grocery Co. v. Clopton, 171 La. 632, 131 So. 734; Tripod Boats, Inc. v. George Engine Co., 170 So.2d 238; Yeargain v. Blum, La.App., 144 So.2d 756, 1 A.L.R.3d 909; Crowley Grain Drier, Inc. v. Fontenot, La.App., 132 So.2d 573; Walton v. Katz & Besthoff, Inc., La.App., 77 So.2d 563, cert. den.
In Bayhi v. S. H. Kress & Co., La.App., 158 So.2d 270 (decided by this court) ,one of the plaintiffs purchased a bottle of nail polish remover from defendant and while in plaintiffs’ premises the bottle exploded causing damages. Plaintiffs brought their suit against defendant therefor eighteen months after the alleged damage occurred and it was met by a plea of prescription of one year. Plaintiffs contended that the suit was a breach of a contract of sale and not subject to the prescription of one year. We said:
“LSA-C.C. Arts. 2534, 2545 and 2546, fix the liability of a seller of defective goods, including damages therefor, and *212 the time in which suit may be brought thereon, at one year running, at the latest, from the date of discovery of the defects. Crowley Grain Drier, Inc. v. Fontenot, La.App., 132 So.2d 573, 577; Walton v. Katz & Besthoff, Inc., La.App., 77 So.2d 563; Bresler v. Nugent, La.App., 134 So.2d 694; Sterbcow v. Peres, 222 La. 850, 64 So.2d 195; Lloyd v. Pan Air Corporation, La.App., 139 So.2d 1.”
Under R.C.C. art. 2534 where the seller knows not the vices of the thing, the redhibitory action must be instituted within a year, at the furthest, commencing from the date of the sale. Such limitation does not apply where the seller had knowledge of the vice and neglected to declare it to the purchaser.
The seller, who knows the vice of the thing he sells and omits to declare it, is answerable to the buyer for damages, in which case, according to R.C.C. art. 2546, the action for redhibition may be commenced at any time provided a year has not elapsed since the discovery of the vice.
The Housing Authority architect, as plaintiff himself alleges, notified plaintiff on January 26, 1955, that: “The caulking used is pulling away from wood, brick, aluminum and iron and does not appear to be elastic underneath”. Thus, on said date plaintiff was apprized of the poor quality of the caulking compound and this we believe is tantamount to a “discovery” of the vice.
Plaintiff waited until November 1965, more than 10 years after the discovery of the vices and defects before bringing his suit against defendant, and it matters not whether the prescription provided for by R.C.C. art. 2534 or by R.C.C. art. 2546 is to be applied, the action is barred by the pi'escription of one year.
Moreover, the suit, instituted more than 10 years after the cause of action accrued would also be barred by the prescription provided by R.C.C. art. 3544 which defendant pleads in the alternative. That article provides:
“In general, all personal actions, except those before enumerated, are prescribed by ten years.”
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.