WAGGONER et ux., Appellants

v.

MIDWESTERN DEVELOPMENT, INC., Respondent

(154 N.W.2d 803)

(File No. 10368.  Opinion filed December 15, 1967)

**Whiting, Lynn, Freiberg & Shultz, Horace R. Jackson,** Rapid City, for plaintiffs and appellants.

**Costello, Porter, Hill, Banks & Nelson,** Rapid City, **Bangs, McCullen, Butler & Foye,** Rapid City, for defendant and respondent.

ROBERTS, Judge.

On April 22, 1960, Cecil and Blanche Waggoner, husband and wife, purchased a new residence in Sunrise Heights Addition in Rapid City, received the usual deed of conveyance and thereafter occupied it as their home. They brought this action against the builder-vendor for damages resulting from water seeping into the basement of the house.

The complaint sets forth three counts, alleging negligence in the first count, fraudulent concealment and deceit in the second, and breach of implied warranty in the third. The trial court before the taking of any evidence granted a motion to dismiss count three. The court as to the other counts granted a motion for directed verdict made at the conclusion of the evidence of the plaintiffs. From the judgment dismissing the action, plaintiffs appeal.

Appellants contend that the trial court erred (1) in directing the verdict for the defendant claiming that the evidence in the language of counsel showed that "Midwestern knew that a spring fed pond was filled without sealing off the springs or providing for drainage, the springs being adjacent to the site where Midwestern constructed the home it sold to the Waggoners * * * and Midwestern at the time it sold the home to Waggoners failed to disclose the facts with regard thereto, the facts being then physically concealed from the Waggoners, and not ascertainable from reasonable inspection" and (2) in dismissing count three based upon breach of implied warranty of fitness alleging that Midwestern knew that the Waggoners purchased the house for use as a home and the same proved unfit for that purpose.

The house was a completed structure prior to sale. No question is presented concerning any representation made during

the purchase negotiations. It appears that there were heavy rains during May and June 1962 and that the water table rose sufficiently to cause water to seep in around the edges of the basement floor. Cracks in the basement floor developed permitting further infiltration. This condition continued during the summer and fall of 1962 and prevailed again in the summers of 1963 and 1965.

The area known as Sunrise Heights Addition situate in the western part of Rapid City, prior to development, was a draw extending easterly from a timbered limestone ridge and the ground to the north and south of the draw sloped upward. The bottom of the draw is the approximate location of the now Baldwin Street with residences including that purchased by plaintiffs built on lots adjacent to the street. Witnesses testified that prior to development there was a pond fed by springs in the vicinity of the Waggoner residence. The owner and developer of the area before the beginning of the construction of houses filled the springs with nearby dirt and rock and graded over the fill in the process of contouring the surface for the street and lots.

John Paul Gries, professor of geology at the South Dakota School of Mines and Technology, basing his opinion upon borings and observations made on and in the vicinity of the Waggoner premises, testified that in his opinion the water appearing in the basements of the houses in the area came from an "elevated" water table resulting from the filling in of the springs and that this condition will continue with seasonal modifications.

Lyle Marsh, an experienced building contractor, was the vice president and managing officer of defendant Midwestern Development, Inc. The evidence shows that on October 2, 1958, Midwestern entered into an agreement with the owner and developer of the area in question for the purchase of lots for the construction of houses. It appears that the building sites were to be acquired on a fully developed basis in compliance with FHA requirements. Mr. Marsh testified that at the time of the purchase of the building sites in October 1958, he "looked at" the area; that there had been excavation on both sides of Bald-

win Street; that there were staked out locations in the area; that Midwestern constructed eleven or twelve houses along Baldwin Street in the vicinity of the Waggoner property; and that during 1959 and the spring of 1960, he was in the area at least bi-weekly overseeing construction.

■ In considering the ruling on motion for directed verdict, we view the evidence in the light most favorable to the plaintiffs, the parties against whom the verdict was directed, and determine whether there was evidence which would have supported a verdict in their favor. Hansen v. Isaak, 70 S.D. 529, 19 N.W.2d 521; Snell v. Watts, 77 S.D. 534, 95 N.W.2d 453.

■ ■ Appellants contend that when contractors engaged in building houses for sale to the public construct negligently so that latent defects result, they are liable to purchasers in damages for injuries caused by their negligence. This state by statute has provided: "Every person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill, subject in the latter cases to the defense of contributory negligence." SDC 47.0304. The liability thus defined results not only from willful acts, but also from want of ordinary care in the management of property. An elemental requirement to liability founded on negligence is the existence of a duty of care owed by the wrongdoer to the person injured or to a class of which he is a member. It is argued that while the house in the instant case was not constructed specifically for plaintiffs, they were members of a class of prospective purchasers for whom the house was built and that defendant's negligence caused injuries "to another" within the terms of the statute.

Respondent urges, however, that an owner of land who is not charged to have been guilty of fraud ceases to be liable in negligence for its condition when he parts with title, possession and control. The rationale for this view appears from the language of the court in Levy v. C. Young Construction Co., Inc., 46 N.J. Super. 293, 134 A.2d 717: "As defendant notes, the policy reasons underlying the rule that the acceptance of a deed without covenants as to construction is the cut-off point so far as the ven-

dor's liability is concerned, are rather obvious. Were plaintiffs successful under the facts presented to us, an element of uncertainty would pervade the entire real estate field. Real estate transactions would become chaotic if vendors were subjected to liability after they had parted with ownership and control of the premises. They could never be certain as to the limits or termination of their liability." The courts of several jurisdictions have recently departed from the original nonliability rule expressing the view that there is no sound reason for a distinction between the liability of a person who erects houses for sale to the public and the manufacturer who supplies dangerous or defective chattels. This conforms to the reasoning of the product liability cases stemming from the landmark case of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050[1]. See also Prosser on Torts (2nd Ed.) § 85, p. 517; Belote v. Memphis Development Company, 208 Tenn. 434, 346 S.W.2d 441; Caporaletti v. A-F Corp., 137 F.Supp. 14; Fisher v. Simon, 15 Wis.2d 207, 112 N.W.2d 705; Annot., 58 A.L.R.2d 865; Stewart v. Cox, 55 Cal.2d 857, 362 P.2d 345.

■ We are here concerned with negligence liability. A duty of care owed by the defendant to the injured persons or to a class of which they were members is essential to liability. Anderson v. Chicago & N. W. Ry. Co., 59 S.D. 543, 241 N.W. 516. Assuming that plaintiffs are entitled to legal protection against the defendant's conduct, in order to establish liability they must show a breach of the duty and resulting injury. One cannot be said in any manner to neglect or refuse to perform a duty unless he has knowledge or be reasonably chargeable with knowledge that an act or omission involves peril or harm to another. Ford v. Robinson, 76 S.D. 457, 80 N.W.2d 471; Rikansrud v. City of Canton, 79 S.D. 592, 116 N.W.2d 234; Restatement of Torts §§ 289, 298; Annot., 100 A.L.R.2d 942.

■ Plaintiffs argue that in buying their home they relied on the skill and judgment of Midwestern; that at the time plaintiffs viewed the home and bought it, the structure, yard, street

---

1. This court has had no occasion to consider the rule announced in the MacPherson case holding a manufacturer of an inherently dangerous chattel, defectively made, liable for injuries to remote users.

paving, gutter and sidewalks were complete; and that there was nothing in the appearance of the premises to suggest underground water which would infiltrate the basement. We may assume for the purpose of decision that defendant owed plaintiffs a duty of care in construction. It does not appear that defendant knew of the existence of the spring and the underground water. The record does not establish that there was anything in the appearance of the area that would have alerted a reasonably prudent person to the presence of the condition here involved.

The case of Sabella v. Wisler, 59 Cal.2d 21, 27 Cal.Rptr. 689, 377 P.2d 889, relied on by appellants is clearly distinguishable. The plaintiffs in that case purchased a home from defendant, a contractor and experienced builder of houses. Settling caused extensive damage to the dwelling. It was held that the purchasers had a right of action against the vendor-builder on the basis of concealment of a latent defect known to him and unknown to the purchasers. The defendant in that case having made excavations for foundation footings for the house was alerted to the existence of fill material and the insufficient compaction. The harm of building the house on the filled ground was foreseeable and defendant had the duty to disclose the existence of this condition to the purchasers. See also Annot. in 80 A.L.R.2d 1453.

■ Likewise, we conclude that plaintiff failed under count two to make a case of actionable fraud and deceit. Plaintiffs relied on the provisions of SDC 47.0401 and 47.0402(3). The first section cited provides: "One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Section 47.0402(3) defines deceit as the "suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact". These provisions declaratory of the common law comprehend an intention to mislead. As we have pointed out there is no claim of actual misrepresentation and the evidence would not have permitted the jury to find that there was concealment of the latent defect known to the defendant.

The third count is predicated as indicated upon implied warranty of fitness. It is contended that defendant engaged in the business of building houses for sale impliedly represented that it possessed the requisite skill for building houses and impliedly warranted that the house sold to plaintiffs was constructed in a workmanlike manner and reasonably fit for habitation.

■■ Warranties are either express or implied. An implied warranty arises under certain circumstances by operation of law and are intended to hold vendors to a course of fair dealing. Lee v. Cohrt, 57 S.D. 387, 232 N.W. 900. There appears in the opinion in that case the following extract from Hoe v. Sanborn, 21 N.Y. 552, 78 Am.Dec. 163: "Implied warranties do not rest upon any supposed agreement in fact. They are obligations which the law raises upon principles foreign to the actual contract; principles which are strictly analogous to those upon which vendors are held liable for fraud. It is for the sake of convenience, merely, that this obligation is permitted to be enforced under the form of a contract."

■ Proof of the breach of an implied warranty is sufficient to justify recovery irrespective of fault or negligence of the seller. 77 C.J.S. Sales § 304; Prosser on Torts, 2nd Ed., § 83, p. 493.

■ As a general rule, it may be said that where a person holds himself out as especially qualified to perform work of a particular character there is an implied warranty that the work shall be done in a reasonably good and workmanlike manner and that the completed product or structure shall be reasonably fit for its intended purpose. 17A C.J.S. Contracts § 329. These principles are particularly applicable where plans are furnished or a building is to be constructed according to a model already built.

■ It may be assumed for the purpose of decision that the doctrine of caveat emptor applies generally to sales of real property and that in the absence of a covenant binding the vendor to sell a well constructed house the vendee has no cause of action on implied warranty. 7 Williston on Contracts, 3rd

Ed., § 926; Annot., 78 A.L.R.2d 446. No such right arises on the resale of used housing since the vendor usually has no greater skill with respect to determining the quality of a house than the purchaser. There is, however, a notable lack of harmony in decisions as to the existence of an implied warranty of fitness upon the sale of a new house or one to be erected or in the course of erection.

In the 1963 edition of Williston on Contracts, there is a review of recent decisions bearing on the question of implied warranty and discussion of the recent trend of decisional law. The author says:

"Over the years, the number of cases which apply the rule of caveat emptor strictly appears to be diminishing, while there is a distinct tendency to depart therefrom, either by way of interpretation, or exception, or by simply refusing to adhere to the rule where it would work injustice.  *  *  *  Broad as is the application of the principle of caveat emptor in sales of real estate, a few courts have been inclined to make an exception in the sale of new housing where the vendor is also the developer or contractor. In such a situation, a purchaser relies on the implied representation that the contractor possesses a reasonable amount of skill necessary for the erection of a house; and that the house will be fit for human dwelling.  *  *  *  It would be much better if this enlightened approach were generally adopted with respect to the sale of new houses for it would tend to discourage much of the sloppy work and jerry-building that has become perceptible over the years." Williston on Contracts, 3rd Ed., § 926A.

In Schipper v. Levitt & Sons, Inc., 44 N.J. 70, 207 A.2d 314, the Supreme Court of New Jersey disapproves the reasoning, to which we above referred, of the appellate division in Levy v. C. Young Construction Co., Inc., supra. The attitude of the court toward the application of the doctrine of caveat emptor in an action between a purchaser of a new house and the builder-vendor is thus expressed:

"The law should be based on current concepts of what is right and just and the judiciary should be alert to the never-ending need for keeping its common law principles abreast of the times. \* \* \* The arguments advanced by Levitt in opposition to the application of warranty or strict liability principles appear to us to lack substantial merit. Thus its contention that caveat emptor should be applied and the deed viewed as embodying all the rights and responsibilities of the parties disregards the realities of the situation. Caveat emptor developed when the buyer and seller were in an equal bargaining position and they could readily be expected to protect themselves in the deed. Buyers of mass produced development homes are not on an equal footing with the builder vendors and are no more able to protect themselves in the deed than are automobile purchasers in a position to protect themselves in the bill of sale. Levitt expresses the fear of 'uncertainty and chaos' if responsibility for defective construction is continued after the builder vendor's delivery of the deed and its loss of control of the premises, but we fail to see why this should be anticipated or why it should materialize any more than in the products liability field where there has been no such result. \* \* \* Levitt relies on the traditional rule that warranties in the sale of real estate are not to be implied (4 Williston, Contracts § 926 (Rev.ed.1936)) and seeks to distinguish recent out-of-state cases which have limited the rule or departed from it. \* \* \* Whether or not the cases may be differentiated, they undoubtedly evidence the just stirrings elsewhere towards recognition of the need for imposing on builder vendors an implied obligation of reasonable workmanship and habitability which survives delivery of the deed."

The rule of implied warranty of the quality of a house in process of construction was derived from the English law. A leading case is Perry v. Sharon Dev. Co., 1937, 4 All E.L.R., from which we quote:

"In the first place, the maximum caveat emptor cannot apply, and the buyer, in so far as the house is not yet completed, cannot inspect it, either by himself or by his surveyor, and, in the second place, from the point of view of the vendor, the contract is not merely a contract to sell, but also a contract to do building work, and, in so far as it is a contract to do building work, it is only natural and proper that there should be an implied undertaking that the building work should be done properly."

The rule was first adopted by an American court in Vanderschrier v. Aaron, 1957, 103 Ohio App. 340, 140 N.E.2d 819, wherein a defective sewer line caused flooding in the basement of the house which had been purchased before completion. The court relying upon English precedent declared that "upon the sale of a house in the course of erection, there is an implied warranty that the house will be finished in a workmanlike manner". See also Hoye v. Century Builders, 52 Wash.2d 830, 329 P.2d 474; Weck v. A:M Sunrise Construction Co., 36 Ill.App.2d 383, 184 N.E.2d 728; Jones v. Gatewood, Okl., 381 P.2d 158; Glisan v. Smolenske, 153 Colo. 274, 387 P.2d 260; Sterbcow v. Peres, 222 La. 850, 64 So.2d 195 (relevant statute); Dunham, Vendors Obligation as to Fitness of Land for a Particular Purpose, 37 Minn. Law Review 108; Roberts, The Unwary Homebuilder, 52 Cornell Law Quarterly 835; Selker, Right of Purchaser in Sale of Defective House, 4 Western Res.L.R. 357.

It is argued that there is no implied warranty in the sale of a completed house even though such warranty arises when the vendor is the builder and the house was in process of construction at the time of contract. In Glisan v. Smolenske, supra, the Supreme Court of Colorado applied the doctrine of implied warranty to the sale of a house which was nearly completed. The court subsequently held that the doctrine extends to a builder-vendor and purchaser of a newly constructed house, completed at the time of contract. In Carpenter v. Donohoe, 154 Colo. 78, 388 P.2d 399, the court said:

"That a different rule should apply to the purchaser of a house which is near completion than would apply to one who purchases a new house seems incongruous. To say that the former may rely on an implied warranty and the latter cannot is recognizing a distinction without a reasonable basis for it. * * * We hold that the implied warranty doctrine is extended to include agreements between builder-vendors and purchasers for the sale of newly constructed buildings, completed at the time of contracting. There is an implied warranty that builder-vendors have complied with the building code of the area in which the structure is located. Where, as here, a home is the subject of sale, there are implied warranties that the home was built in workmanlike manner and is suitable for habitation."

In a recent decision, Bethlahmy v. Bechtel, Idaho, 415 P.2d 698, the defendant constructed a house and sold it to the plaintiff. After the vendee took possession he claimed that the house was rendered unfit for habitation because of water seepage. The court held that a purchaser of a new house is entitled to rescission and restitution where major defects render the house unfit for habitation.

■■ We conclude that where in the sale of a new house the vendor is also a builder of houses for sale there is an implied warranty of reasonable workmanship and habitability surviving the delivery of deed. The builder is not required to construct a perfect house and in determining whether a house is defective the test is reasonableness and not perfection. Schipper v. Levitt & Sons, Inc., supra. The duration of liability is likewise determined by the standard of reasonableness.

The judgment is reversed with directions to reinstate the third count of the complaint and to proceed thereafter in conformity with the views herein expressed.

All the Judges concur.