Donald W. BROWN and Bette L. Brown, Plaintiffs and Appellants,

v.

Jerry D. FOWLER and Diamond J. Enterprises, a corporation, Defendants and Respondents.

No. 12306.

Supreme Court of South Dakota.

Submitted on Brief April 27, 1978.

Decided June 14, 1979.

William Jason Groves of Sieler, Sieler & Trimble, Rapid City, for plaintiffs and appellants.

FOSHEIM, Justice.

This is an action in which plaintiff-appellants Donald W. Brown and Bette L. Brown seek damages for the settling of the basement in their residence. Defendant-respondents are Diamond J. Enterprises (Diamond J), a corporation, which constructed the house, and Jerry D. Fowler, principal shareholder, general manager and president of Diamond J. The trial court granted summary judgment in favor of defendants. We hold that defendants' negligence or lack thereof presents an issue of fact and therefore reverse and remand for trial.

In early 1972, Diamond J acquired a parcel of land from one J. F. Simpson. In September of that year, the corporation, through Fowler, acquired a building permit for a residence on part of this land, and began to construct the house that is the subject of this case. Construction was completed, and the house was sold to Paul E. Bogue and Ernestine J. Bogue on April 20, 1973. In the summer of 1974, the Bogues noticed that the house was settling in various places, and contacted Fowler. Fowler and Diamond J undertook corrective measures costing something over $3,000.00.

Plaintiffs purchased the house on April 25, 1975, after examining it and finding no defects other than a floor that squeaked. Plaintiffs did not talk with the Bogues concerning the condition of the house prior to the purchase. Approximately two months after plaintiffs bought the house, they noticed structural problems. A door was sticking, the ceiling was separating from the paneling on the basement wall and the basement floor began to slope. The kitchen cabinets also separated from the ceiling.

Plaintiffs contacted an engineer in the fall of 1975, and his report is a part of the record. This report indicates that the house was built on fill material of about ten feet in depth. The report also indicates that an underpinning, which was apparently part of the repair undertaken while the Bogues owned the house, did not stop the settling because it did not extend below the fill material. The report stated further that the footings failed to conform to "local building criteria." Corrective action recommended in this report included placement of reinforced concrete pier underpinnings and rerouting of downspouts as well as repair of damaged portions of the structure.

The trial court granted summary judgment in favor of defendants, and plaintiffs have appealed. Defendants' attorneys withdrew after the record was settled, and defendants have not participated further in the appeal. The major issues presented are as follows: (1) Does defendants' negligence

or lack thereof present a genuine issue of material fact, thus making summary judgment improper; and (2) are defendants liable to plaintiffs for breach of the implied warranty of habitability given as part of the sale of a residence? We conclude that an issue of fact is presented by defendants' negligence or lack thereof, but that summary judgment was proper on the alternate theory of warranty liability.

In *Waggoner v. Midwestern Development, Inc.,* 83 S.D. 57, 154 N.W.2d 803 (1967), we enumerated the requirements for holding a builder-vendor of a residence liable under theories of fraudulent concealment of defects, negligent construction, and implied warranty of habitability. The Browns' complaint raises all three of these theories.

The Browns claim, first, that the residence was negligently constructed because it was built on at least ten feet of fill material, citing *Sabella v. Wisler,* 59 Cal.2d 21, 27 Cal.Rptr. 689, 377 P.2d 889 (1963). In that case, the court held that a jury could find that defendant was alerted to the presence of fill material below the construction site when he excavated for foundation footings. The court also held that harm to owners of this house was foreseeable, since it was well known in the building industry that houses constructed on such fill material would settle, with resultant damage to the home. A jury verdict in favor of the homeowners was upheld.

■ We believe that the reasoning of the California Court is sound. We must, however, determine whether negligence liability for improper construction of a residence extends to purchasers other than those who initially purchase from the builder-vendor. The question is thus whether defendants owed a duty of proper construction of the residence to plaintiffs, or to a class of which plaintiffs are members. *Waggoner v. Midwestern Development, Inc.,* supra; *Sabella v. Wisler,* supra. While this house was not constructed specifically for plaintiffs, it was constructed for sale to the general public, or as defendants said in their answer to plaintiffs' interrogatories, for "speculation." Under these circumstances, we do not believe that plaintiffs should be precluded from recovery merely because the house was not constructed specifically for them. *Sabella v. Wisler,* supra.

■ Whether a duty should be imposed on defendants on the facts of this case is essentially a policy determination. In making this determination, we consider several factors, among them the extent to which the transaction was intended to affect plaintiffs, foreseeability of harm to them, the degree of certainty that they suffered injury, the closeness of the connection between defendants' conduct to the injury suffered and the policy of preventing future harm. *Stewart v. Cox,* 55 Cal.2d 857, 863, 13 Cal.Rptr. 521, 524, 362 P.2d 345, 348 (1961); *Sabella v. Wisler,* supra.

Applying these factors, we conclude that defendants were under a duty, running to the Browns, to construct the house non-negligently. Plaintiffs were members of the class of purchasers for whom the house was constructed, even if they were not the first purchasers. It is certainly foreseeable that such a house will be sold to subsequent purchasers, and that any structural defects are as certain to harm the subsequent purchaser as the first. Foreseeability is enhanced by the fact that the defects came to light within three years after construction and within one year after defendants' unsuccessful attempt to stop the settling. It is apparent from the record that plaintiffs suffered injury and that defendants' conduct is directly related to this injury. The policy of preventing future harm is promoted by imposing liability on contractors who negligently construct houses.

■ We believe there is also ample evidence in the record to support a jury finding that defendants breached the duty to plaintiffs. As in *Sabella v. Wisler,* supra, a jury could find that defendants are chargeable with knowledge of the existence of fill material, since they dug the excavation for the basement footings. *Waggoner v. Midwestern Development, Inc.,* supra. The report of plaintiffs' engineer is evidence for the proposition that defendants were negligent in building on fill without sinking sup-

porting piers to nonfill depths. Plaintiffs are thus entitled to an opportunity to prove their claim of negligence and summary judgment was improperly granted. We express no opinion, however, on the question of Fowler's individual liability for negligent construction, as distinguished from that of Diamond J.

■ Since plaintiffs have asserted liability on other grounds, we will also consider their alternate contentions. The first of these is that defendants breached the implied warranty of habitability as set forth in *Waggoner v. Midwestern Development, Inc.,* supra. We agree with the trial court that this warranty should extend only to one who purchases a house from the builder-vendor of the house.

This requirement is essentially that of privity of contract. Privity has been eliminated as a requirement for liability on an implied warranty in many cases involving the sales of personal property. See SDCL 57–4–41, U.C.C. § 2–318 (South Dakota has adopted a modified form of alternative B to U.C.C. § 2–318). This elimination of privity has come about mainly as a result of the extension of manufacturers' liability for defective products. An implied warranty would be of little use if it did not, in the case of personal property, extend beyond the manufacturer's buyer. Legislatures have recognized this rationale, and have adopted anti-privity statutes as a part of the Uniform Commercial Code. Neither the statute nor the rationale applies where land and a dwelling are sold. The builder is often the vendor, and his purchaser the ultimate consumer. Courts have accordingly been more reluctant to extend the liability of those who sell real estate. Although it appears that a majority of courts now recognize some form of implied warranty in connection with the sale of a house by a builder-vendor, Anno., 25 A.L.R.3d 383, 413–425 (1969), very few have recognized the applicability of this warranty absent privity, where the damages sought are merely economic. See, e. g., *Duncan v. Schuster-Graham Homes, Inc.,* Colo., 578 P.2d 637 (1978); *Sousa v. Albino,* R.I., 388 A.2d 804 (1978); *Coburn v. Lenox Homes, Inc.,* 173 Conn. 567, 378 A.2d 599 (1977).

Contra, *Barnes v. MacBrown & Co., Inc.,* 264 Ind. 227, 342 N.E.2d 619 (1976).

We note that some courts have allowed persons not strictly in privity with the seller to recover, on a warranty theory, for personal injuries incurred as a result of faulty construction. See *Schipper v. Levitt & Sons, Inc.,* 44 N.J. 70, 207 A.2d 314 (1965). Since we are in this case concerned only with economic damage, we express no opinion on the merits of these cases.

We conclude, however, that privity is not required where the action is based on the builder-vendor's negligence. This is consistent with *Waggoner v. Midwestern Development, Inc.,* supra. See also *Coburn v. Lenox Homes,* supra. The negligence action is limited by its own requirements of proof as outlined above. The warranty liability, on the other hand, does not require proof that the builder-vendor has been negligent, but only that he has not transferred a reasonably habitable house to his purchaser. *Waggoner v. Midwestern Development, Inc.,* supra. We believe that the requirement of privity for the enforcement of the implied warranty in the sale of a house is a reasonable limitation on this action, which might otherwise make the builder-vendor an insurer of the habitability of the house to future buyers.

■ The Browns contend, finally, that defendants should be liable to them for fraud and deceit because defendants did not disclose the settling problem to them. There must, however, be an intent to mislead in order to invoke fraud liability in this type of transaction. *Waggoner v. Midwestern Development, Inc.,* supra. There is no evidence on the record that would support an inference of such an intent on the part of defendants. Since defendants did not own the house when it was sold to the Browns, they were unable to disclose anything about its condition to the Browns at that time.

The judgment is reversed and the case is remanded for trial on the issue of negligent construction.

All the Justices concur.