#24734-rev&rem-KERN, Circuit Judge
**2008 SD 103**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

SCOTT EHRESMANN,                               Plaintiff and Appellant,

   v.

DOUGLAS R. MUTH,                               Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT,
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE WILLIAM J. SRSTKA, JR.
Judge

* * * *

MICHAEL A. HENDERSON of
Cadwell, Sanford, Deibert & Garry, LLP          Attorneys for plaintiff
Sioux Falls, South Dakota                       and appellant.

STEVEN J. MORGANS and
DANIEL R. FRITZ of
Lynn, Jackson, Shultz & LeBrun, PC              Attorneys for defendant
Sioux Falls, South Dakota                       and appellee.

* * * *

ARGUED
AUGUST 27, 2008

OPINION FILED 10/29/08

KERN, Circuit Judge

[¶1.]     Scott Ehresmann ( Ehresmann) purchased two four-plexes and one ten-plex pursuant to a contract for deed and subsequent warranty deed listing Doug Muth and his wife Charity Muth as the sellers.  A prior purchase agreement between the parties listed Cisco Financial Group as the seller.  Ehresmann experienced continuing problems with the four-plexes' vinyl siding.  He brought suit against Doug Muth alleging fraud and deceit, negligent misrepresentation, negligent construction, and breach of implied warranty.  The circuit court granted summary judgment for Doug Muth, holding that the property transaction was between Ehresmann and Cisco Financial Group; Doug Muth only acted in an agency capacity.

[¶2.]     We reverse and remand.

BACKGROUND

[¶3.]     In 2001 and 2002 Doug Muth served as general contractor for the construction of two four-plexes and one ten-plex on his real property in Sioux Falls.  Subcontractors constructed the property and installed the vinyl siding on the two four-plexes.  Construction was completed in approximately April, 2002 and the buildings were operated as rental properties.

[¶4.]     The properties were listed for sale with real estate agent Jeremy Muth who prepared a real estate listing sheet.  This listing was provided to potential buyers.  It described the buildings as "new construction" and stated that the siding was "maintenance free."  Ehresmann viewed the property with Jeremy Muth and was given a copy of the listing sheet.  At that time, Ehresmann alleges that Jeremy Muth confirmed that the vinyl siding on the two four-plexes was "maintenance free."

[¶5.]     On March 28, 2003, Ehresmann entered into a purchase agreement to purchase the two four-plexes and one ten-plex. The purchase agreement identified Cisco Financial Group as the seller. Doug and Charity Muth signed their names on the purchase agreement followed by the words "for Cisco Financial Group." Cisco Financial Group is a limited liability company in which Doug Muth has an ownership interest. The purchase agreement specified a closing date of April 30, 2003.

[¶6.]     The sale did not close as contemplated. Instead, on May 15, 2003, Ehresmann and Doug and Charity Muth executed a contract for deed. The contract for deed did not mention Cisco Financial Group. It listed Doug and Charity Muth as the sellers.

[¶7.]     After the contract for deed had been paid in full, the Muths executed a warranty deed conveying title to Ehresmann. The warranty deed did not mention Cisco Financial Group. Doug and Charity Muth signed the warranty deed without any reference to Cisco Financial Group.

[¶8.]     Shortly after taking possession, Ehresmann began experiencing problems with the vinyl siding on the two four-plexes. In June 2003 the siding buckled and strong winds loosened several pieces. Ehresmann made the necessary repairs and discovered that a number of screws had been installed in the siding after the original installation but before he took possession. In December 2003 or January 2004 strong winds again damaged the siding which Ehresmann repaired. Ehresmann alleges that following these winds several other pieces of siding suffered substantial damage that he has not repaired due to the expense. The problems with the siding are purportedly the result of improper installation.

[¶9.]      In March 2006 Ehresmann brought suit against Doug Muth alleging fraud and deceit, negligent misrepresentation, negligent construction, and breach of implied warranty. Ehresmann based his claims on the problems with the siding and the representations made in the real estate listing sheet and by the real estate agent.

[¶10.]      Doug Muth moved for summary judgment. The circuit court granted summary judgment holding that in all matters relevant to the construction and sale of the property, Doug Muth merely acted as an agent for Cisco Financial Group. Therefore, Doug Muth did not owe Ehresmann any duty and could not be held personally liable.

[¶11.]      On appeal Ehresmann asserts that the circuit court erred when it granted summary judgment for Doug Muth. Ehresmann raises the following issues:

> Did the circuit court err in granting summary judgment to Doug Muth with respect to Ehresmann's claims for fraud and deceit and negligent misrepresentation?
>
> Did the circuit court err in granting summary judgment to Doug Muth with respect to Ehresmann's negligent construction and implied warranty claims?

## STANDARD OF REVIEW

[¶12.]      "On appeal, we will affirm summary judgment when the facts and the law are clear and no genuine issues of material fact exist." Citibank South Dakota, N.A. v. Schmidt, 2008 SD 1, ¶ 8, 744 NW2d 829, 832 (citing Bordeaux v. Shannon County Schools, 2005 SD 117, ¶ 11, 707 NW2d 123, 126). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact." SDCL 15-6-56(c). "[T]he benefit of any doubt about whether there is a

material issue of fact goes to the nonmoving party." Trammell v. Prairie States Ins. Co., 473 NW2d 460, 462 (SD 1991)(citations omitted).

ANALYSIS AND DECISION

[¶13.]     In granting summary judgment, the circuit court found that Doug Muth was acting as an agent for Cisco Financial Group in the sale and construction of the two four-plexes and one ten-plex. The circuit court based this finding solely on the purchase agreement and supplemental addendum that Doug and Charity Muth signed "for Cisco Financial Group." It noted that "[i]t is inescapable that the agreement entered into for the purchase of said property was between [Ehresmann] and Cisco Financial Group." As a result, the circuit court concluded that Doug Muth owed no duty to Ehresmann and could not be held personally liable for actions taken on behalf of Cisco Financial Group. *See* SDCL 47-34A-303 (specifying that the "liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations and liabilities of the company.").

[¶14.]     Ehresmann contests this characterization and emphasizes that both the contract for deed and the warranty deed, which replaced the purchase agreement, were signed by Doug and Charity Muth without any reference to Cisco Financial Group. This is significant because, even if there was a controlling agency relationship between Cisco Financial Group and Doug Muth for the sale and construction of the property, where a contract does not disclose the principal, the agent may be held personally liable. The Collegian v. Hileman, 88 SD 601, 605, 226 NW2d 163, 165 (1975).

[¶15.]    Ehresmann further notes that there is no evidence that Cisco Financial Group owned the property at issue. Indeed, Doug Muth concedes for the sake of argument on appeal that Cisco Financial Group did not own the property at the time of conveyance. As a non-owner of the property at issue, it can be argued that Cisco Financial Group did not have a legal right to sell the property and, thus, cannot be considered an acting principal vicariously liable for the acts associated with its sale.

[¶16.]    Whether an individual is an agent is ultimately a question of fact. A.P. & Sons Const. v. Johnson, 2003 SD 13, ¶ 21, 657 NW2d 292, 297. Ehresmann has submitted sufficient evidence to establish a genuine issue of material fact on the question of whether Doug Muth was acting in an individual or agency capacity when overseeing construction and sale of the property at issue. "Moreover, when there is reasonable doubt on whether a genuine issue of material fact exists, the doubt should be resolved against the movant." Berbos v. Krage, 2008 SD 68, ¶ 17, 754 NW2d 432, 437 (citations omitted). Thus, the circuit court erred by granting summary judgment premised on an asserted lack of personal liability.

[¶17.]    We next determine if summary judgment is warranted on alternative grounds. At issue is whether there are genuine issues of material fact concerning Doug Muth's alleged fraud and deceit, negligent misrepresentation, negligent construction, and breach of implied warranty. "On review, we apply the same test as the trial court: we probe the record for material facts, resolve disputed facts in favor of the nonmoving party, and decide whether the moving party is entitled to judgment as a matter of law." Fisher v. Kahler, 2002 SD 30, ¶ 5, 641 NW2d 122, 125 (citing Sorrels v. Queen of Peace, 1999 SD 133, ¶ 5, 601 NW2d 606, 608).

[¶18.]      Ehresmann contends that statements referring to the siding as "maintenance free," by the real estate agent and in the real estate listing sheet, are attributable to Doug Muth and constitute fraud and deceit or negligent misrepresentation.  The circuit court dismissed this assertion finding, in part, that the real estate agent was an agent of Cisco Financial Group and, thus, Doug Muth may not be held personally liable for any actionable misrepresentations made by the real estate agent.

[¶19.]      A principal is held liable for the misrepresentations of his agent even if "the principal was unaware of or received no benefit from his agent's conduct." McKinney v. Pioneer Life Ins. Co., 465 NW2d 192, 194 (SD 1991) (citations omitted). Therefore, the individual or entity that hired the real estate agent may be exposed to potential liability for the real estate agent's alleged misrepresentations.  However, there is a dispute concerning whether the real estate agent was acting on behalf of Cisco Group Financial or Doug Muth.  Because the identity of the seller and principal of the real estate agent is in question, summary judgment is not proper on this basis.

[¶20.]      "Questions of fraud and deceit are generally questions of fact and as such are to be determined by the jury."  Laber v. Koch, 383 NW2d 490, 492 (SD 1986)(citations omitted).  Deceit includes "[t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true."  SDCL 20-10-2.  Similarly, fraud exists where a representation is "made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made."  North American Truck v. M.C.I. Comm., 2008 SD 45, ¶ 8, 751 NW2d 710, 713 (quoting

Northwest Realty Co. v. Colling, 147 NW2d 675, 683 (SD 1966)).  Intent to deceive and reliance are also required in order for fraud to be actionable.  *Id.*

[¶21.]         Negligent misrepresentation contains a less exacting knowledge requirement than fraud and deceit and was alleged in the alternative in this case.  It "occurs whenever one party makes (1) a misrepresentation, (2) without reasonable grounds for believing the statement to be true, (3) with the intent to induce a particular action by another party, and the other party (4) changes position with actual and justifiable reliance on the statement, and (5) suffers damage as a result." *Fisher*, 2002 SD at ¶ 10, 641 NW2d at 126-27.

[¶22.]         In order to survive a motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." One Star v. Sisters of St. Francis, 2008 SD 55, ¶ 23, 752 NW2d 668, 678 (quoting SDCL 15-6-56 (e)).  Ehresmann has satisfied this requirement with respect to his claims of fraud and deceit and negligent misrepresentation.   Ehresmann's allegation that screws were added to the siding after installation and prior to sale, supports a reasonable inference that Doug Muth had knowledge that the siding was not "maintenance free" at the time of the sale and that he intended to deceive potential buyers by attempting to conceal the siding's defects.  *See* St. Paul Fire & Marine Ins. v. Engleman, 2002 SD 8, ¶ 15, 639 NW2d 192, 199 (noting that summary judgment may not be granted where a genuine issue of material fact exists on the inferences drawn from the facts).  Likewise, Ehresmann's decision to purchase the property after receiving representations that the siding was maintenance free reasonably supports a finding of reliance.  Therefore, because the essential elements of the

claims are adequately supported by alleged facts, albeit disputed, summary judgment is inappropriate for Ehresmann's claims of fraud and deceit and negligent misrepresentation.

[¶23.]     Claims of negligent construction and breach of implied warranty exist where a builder-vendor fails to construct in a reasonably good and workmanlike manner.  Waggoner v. Midwestern Development, 83 SD 57, 154 NW2d 803, 807 (1976).  Liability extends to the sale of newly constructed buildings that are fully completed at the time of sale. *Id.* at 65, 154 NW2d at 807-08 (quoting Williston on Contracts, 3d ed § 926A (1963)).  In this situation, "a purchaser relies on the implied representation that the contractor possesses a reasonable amount of skill necessary for the erection of the house; and that the house will be fit for human dwelling."  83 SD at 65, 154 NW2d at 807-08 (quoting Williston on Contracts, 3d ed, § 926A (1963)).

[¶24.]     The circuit court concluded that since Cisco Financial Group was the builder-vendor for the property Doug Muth owed no duty to Ehresmann and could not personally be held responsible for any alleged negligent construction or breach of implied warranty.  The question of whether Doug Muth, as general contractor, however, was acting in an individual or agency capacity in the construction of the property is not settled and remains a genuine issue of material fact rendering summary judgment inappropriate.

[¶25.]     Additionally, the fact that the property was leased for approximately one year prior to sale does not automatically shield Doug Muth from liability for breach of implied warranty.  Instead, duration of liability is determined by the standard of reasonableness.  *Id.* at 68, 154 NW2d at 809.  While a right to pursue a

cause of action based upon implied warranty does not extend to subsequent purchasers[1], we disagree with Doug Muth's characterization of Ehresmann as a "subsequent purchaser." *See* Brown v. Fowler, 279 NW2d 907, 909 (SD 1979)(referring to subsequent purchasers as "purchasers other than those who initially purchase from the builder-vendor."). The application of the doctrine of *caveat emptor* to subsequent purchasers is premised on the understanding that a non-building "vendor usually has no greater skill with respect to determining the quality of a house than the purchaser." *Waggoner,* 83 SD at 65, 154 NW2d at 807. Here, enough evidence was presented to reasonably infer that Doug Muth was the builder-vendor and that the application of implied warranty liability to defects discovered during Ehresmann's possession was reasonable in duration. As a result, summary judgment was not warranted for claims of negligent construction and implied warranty.

[¶26.]    Reversed and remanded.

[¶27.]    GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

[¶28.]    KERN, Circuit Judge, for SABERS, Justice, disqualified.

---

1.    Liability for negligent construction applies to subsequent purchasers. *See* Brown v. Fowler, 279 NW2d 907, 909 (SD 1979).