L. I. BOYCE, Plaintiff in Error, v. JOE SHANKMAN, Defendant in Error. — 292 S. W. (2d) 229.

Western Division, Jackson.  July 22, 1953.

Petition for Certiorari denied by Supreme Court, October 9, 1953.

476

Lucius E. Burch, Jr., James M. Manire and Eugene P. Boyd, Memphis, for plaintiff in error.

Winchester & Bearman, Memphis, for defendant in error.

AVERY, J. L. I. Boyce, a lady, leased one apartment in a duplex located at 1050 Springdale Avenue in Memphis, Tennessee, from Joe Shankman September 30,

1950. She and one Miss Mattie Spencer moved into it together on October 2, 1950, and after living there until about December 1, 1951, while taking some of her wearing apparel from the attic fell through an opening in the ceiling between the first floor and attic, left there for an attic fan which was never installed, from which fall she suffered severe personal injury, for which she brought suit for damages against the landlord, Joe Shankman.

The case was tried to a jury in Division III of the Circuit Court of Shelby County, Hon. A. H. Holmes, Judge, and at the conclusion of plaintiff's proof in chief, upon motion of defendant, the Court directed a verdict for the defendant. Motion for a new trial was seasonably made, overruled and plaintiff has perfected her appeal to this Court.

The declaration is in two counts. The first charges the defendant with negligence in placing and maintaining a covering over the fan opening of unsubstantial quality which gave an illusive appearance of strength and stability, failing to provide a safe place over which it was necessary for plaintiff to walk, failing to give notice of such condition, both for the top and bottom of the opening, and sets out the quality and appearance of the coverings. The second count adopts that statements of the first count, and alleges that the defendant maintained a dangerous trap, failed to warn plaintiff of the unsafe condition thereof, knowing that plaintiff and others would have to use the upper covering for walking or otherwise maintaining her footing. The declaration is tedious and specific in charging negligence.

The pleas are general and specific denials of every act of negligence charged. Minute and many are the definite

charges of contributory negligence on the part of the defendant.

There are two assignments of error. One a general assignment that the Court erred in granting defendant's motion for directed verdict at the conclusion of plaintiff's proof, and the other to the same effect but specifically pointing out the reasons why the Court's action was error in 9 separate statements.

The injuries to the plaintiff are proven by several witnesses including the testimony of a reputable physician and surgeon, whose specialty is orthopedic surgery.

As a part of the record the original exhibits were sent up and they consist of,

(1) broken portions of the upper covering of the fan opening;

(2) photograph of the attic floor showing the fan opening, concealed stairway opening with the stairs down, boards forming the attic floor around both openings, the upper side of the fan opening without the covering, water pipe installed along the attic floor and some of the material stored in the attic; (3) photograph showing lower side of fan opening with covering attached and a portion of the stairway in its concealed position; (4) the piece of masonite which covered the lower fan opening; and (exhibit No. 1 to the cross-examination of plaintiff) showing signed copy of original lease contract.

In addition to the facts shown by these exhibits some of the important and pertinent undisputed evidence is as follows: defendant agreed to enlarge the attic floor area so plaintiff could store household furniture and other things therein, he with his servant went into the

attic the day after plaintiff moved into the apartment and put additional boards or planks in the attic floor, came down and informed the plaintiff that the attic was safe, plaintiff relied on defendant's statement and stored her furniture and that of Miss Spencer, with other things in the attic after the work was done and statements made, the portion of the attic floor through which the opening was left for the attic fan was covered with a thick black rectangular building material when plaintiff first went into the attic; the lower side of the fan opening was covered with a piece of material painted to harmonize with the ceiling, a person could not see the under side of the upper covering of the opening from beneath, plaintiff did not know the nature or composition of these coverings, prior to the accident plaintiff had not walked or stepped upon the covering over the fan opening, that it had not been necessary for her to step on it before on account of the relative position of the fan opening to the opening for the concealed stairs and the position of her things stored in the attic, that plaintiff was injured in her fall caused by the breaking of the cover over the attic floor fan opening when she stepped upon it as a result of having stumbled over the water pipe on the attic floor, that the water pipe was a part of the building installation, that the plaintiff was a woman, unexperienced in quality of material and house building, the defendant was an experienced builder of houses, that there was no barricade around the attic fan opening, that this covering was plaster board consisting of plaster compressed between two pieces of black paper, that it was not substantial or suitable for weight-bearing purposes, that it had the appearance of weight-bearing material, and appeared to be lying on the floor, that the defendant did not warn the plaintiff that this covering over the fan opening was

not of sufficient strength to be used for the purpose which he knew and prepared the attic to be used by plaintiff, and that plaintiff had been in the attic many times between the date of her occupancy of the apartment and her fall.

As has been said by other decision of this Court and the Supreme Court, the taking of a case from the jury by the trial Judge and deciding the case himself, while it is proper in some cases, goes deeper than a simple adjudication of the property rights of the parties. A constitutional guaranty provision is involved in that Article I, sec. 6 of the Constitution of Tennessee provides:

"That the right of trial by jury shall remain inviolate, and no religious or political test shall ever be required as a qualification for jurors."

The last clause has no application to the issues in the instant case. It is too well known, to necessitate the citation of references in explaining or defining the rights of the plaintiff when defendant seeks a directed verdict, and we content ourselves by simply repeating the fact that, in all such cases the

"plaintiff is entitled to all legitimate inferences of fact favorable to him which may be reasonably drawn from the evidence tending to support the cause of action stated in his declaration." Prudential Ins. Co. v. Davis, 18 Tenn. App. 413, 429, 78 S. W. (2d) 358, 368. "The trial judge should take the most favorable view of the evidence supporting the rights asserted by the party against whom the motion is made, and discard all countervailing evidence."

Wildman Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn. 551, 249 S. W. 984, 985.

It is also unnecessary to discuss the authorities which involved the questions of proximate cause and intervening causes. To review all the authorities would be but to burden this opinion. We will only make a few references.

" 'If the occurrence of the intervening cause might reasonably have been anticipated, such intervening cause will not interrupt the connection between the original cause and the injury.' Gannon v. Critchlow [13 Tenn. App. 281]. * * *

"Whether an act or omission is the proximate cause of an injury is a question for the jury, unless the determinative facts are undisputed, and the minds of all reasonable men could reach only one conclusion from such facts as to the proximate cause of the injury. Western Union Telegraph Co. v. Dickson, 27 Tenn. App. 752, 173 S. W. (2d) 714; Tri-State Transit Co. of Louisiana, Inc., v. Duffey, 27 Tenn. App. 731, 173 S. W. (2d) 706."

The statements in the above referred to cases are cited with approval in McGinniss v. Brown, 30 Tenn. App. 178, 204 S. W. (2d) 334, 335.

The Court has reviewed every citation relied upon by the defendant as shown by the excellent brief of his counsel and we have no fault whatsoever with those citations for they do support the propositions of law outlined in the brief. We thoroughly agree with the position that the landlord is not an insurer of leased premises, nor is he charged with constant care and inspection; that the landlord and the tenant have the duty

to exercise ordinary care to know and discover conditions of these premises; a tenant has the duty to exercise ordinary care to know and discover conditions of these premises; a tenant has the duty to exercise ordinary care to avoid injury; that a clause in the lease that the premises are in good order at the time of the execution of the lease is valid and binding on the tenant for all purposes as shown by the cases cited to support that proposition. We might call attention to the fact however, that the citation by the defendant to 32 Am. Jur. 538, Section 671, to support his statement that when the control of the leased premises passes to the tenant, it is the duty of the tenant to make examination of the leased premises to determine their safety and adaptability to the purposes for which they are leased, also contains the provisions that

"If, however, the landlord is at the time of the letting aware of the dangerous or unhealthy conditions of the premises arising from latent defects, it is his duty to disclose such fact, and his failure to do so or his concealment thereof may constitute fraud or negligence which not only renders him liable to the tenant for resulting injuries, but also enables the tenant to escape liability for future rents if he abandons the possession. So, a landlord may be liable for not disclosing a latent source of danger known by him to be such, and not discoverable by the tenant. This duty of disclosure arises not directly from the contract, but from the relation of the parties, and is imposed by law—while the failure to reveal such facts may be not actual fraud or misrepresentation, it is such negligence as may lay the foundation of an action against the lessor if injury occurs."

In reviewing cases of this character, this Court is ever mindful of the fact that the trial Court is expected to rule promptly on motions for a directed verdict, especially when such motion is made at the conclusion of plaintiff's proof, in order to conserve the time and expense of the Court, the litigants, the public and because of other factors involved, and in so doing in the ordinary case depends upon his memory respecting the evidence. We think the learned Trial Judge may have overlooked some of the meaning and therefore inferences to be drawn from the following statements of the plaintiff:

"Q. Now what did Mr. Shankman tell you about the condition of the attic? A. Mr. Shankman was gone for quite a while, and then when Mr. Shankman finally came back he went up in the attic, and the negro had been working up there, and Mr. Shankman said to Miss Spencer, told her that we are through up there, referring to the attic, you can put your things up there, it is perfectly safe.

"Q. Was the statement made in your presence? A. Definitely.

"Q. Did you believe it? A. Yes, I had no reason not to believe it." (R. p. 35.)

Testimony of Miss Spencer:

"Q. Will you state to us what you heard him say about the condition of the attic floor, please? A. Yes, see when we moved in we had a lot of furniture, Mrs. Boyce had a lot and I had a lot of furniture and she looked at the apartment to see if we could get it all in the attic before we took it. Mr. Shankman said: 'There is plenty of storage in the attic and it is floored and if there isn't enough flooring, I will put

some more in there and it will hold all of your furniture.' A few days after that we signed the lease and moved in. He brought a man out here and they went up in the attic and the man put some more flooring in there. After they had been up there for some time they came down and Mr. Shankman said, 'You can take all your things upstairs that you want to because it is sufficient to hold all of it and there is plenty of room and it is perfectly safe to put your furniture up there.'

"Q. Did you ever hear Mr. Shankman make any other statement about the attic floor except the one you have just mentioned about it being safe. A. No, he said it was safe and that is all there is to it, we thought it was, of course, and he told us it was, and after they had worked on it." (R. p. 86.)

■ Viewing this testimony and the inferences to be drawn therefrom most favorable to the plaintiff, we think it can well be said that the plaintiff, from all the facts and circumstances made a case which presented an issue for the jury at the close of her evidence in chief.

■ We do not think that, with the evidence as it is presented in this record, under all the circumstances, including the position of the stairs opening, the approach to the attic by the stairs, the relative position of the point of entry on to the attic floor by a person ascending the stairway to the fan opening with the described material over it, en route to or from the attic space behind the fan opening, and what had been said by defendant, the fact the plaintiff testified that she knew the fan opening was there, what it was left for, and how it might be used for the fan, and that she had not stepped on that board before

in her several trips into the attic can be construed to mean that she had discovered it to be unsafe to walk upon and that she had been negligent in failing to make such a discovery, then viewed in the light most favorable to plaintiff, and so as to hold the defendant, "not liable as a matter of law."

It is true, as said by defendant,

"This is not a case where the tenant was injured the first day or the first week or so after she moved into the premises".

but there is nothing in the record to indicate that the covering over the fan opening had changed in appearance or had been moved, from the appearance and position it was in the first day of the occupancy of the apartment by the plaintiff, and we must presume this to be true.

We do not think that the fact that the plaintiff stumbled or caught the heel of her shoe on the small pipe that was installed along the floor could be said, "as a matter of law" to render the defendant not liable for her injury under the circumstances of this case. The pipe was a part of the structure. It was there as such when the defendant and the Negro were in the attic laying the additional floor. Defendant was a house builder, he must have seen this pipe and known its relative location to the two openings and the place where plaintiff's furniture and other things would be stored in the attic and that plaintiff would be walking over it in going to and from the storage space. As a builder and owner of the apartment we must infer that he knew the composition of this plaster board, that it formed a portion of the floor space of the attic, that it would not support the

relative weight that the other part of the attic floor would support. On the other hand the plaintiff was a woman with no building structural knowledge.

Both parties have relied upon the famous case of Wilcox v. Hines, 100 Tenn. 538, 539, 564, 46 S. W. 297, 41 L. R. A. 278. We find nothing in that case contrary to this opinion.

Under all the circumstances of this case as revealed by the record, we are of the opinion that the negligence of the parties is a question for the jury to determine, and the Court erred in granting the motion of defendant at the conclusion of plaintiff's proof, and instructing the jury to render a verdict in favor of defendant, and refusing to grant plaintiff a new trial.

The result is, therefore, that the assignments of error are sustained, the verdict and judgment set aside, and this case remanded to the Circuit Court of Shelby County for a new trial.

The cost of this appeal will follow the judgment of this Court and all the costs in the lower Court will be adjudged by that Court at the conclusion of the case.

Swepston, P. J., (Western Section) and Carney, J., concur.