Rose Marie Belote, by Next Friend and Mother, Mrs. Joseph A. Parker,

*v.*

Memphis Development Company, Fogelman and Company, and Stanley P. Rogers.

(*Jackson,* April Term, 1961.)

Opinion filed May 5, 1961.

ANTHONY A. ASPERO, ASPERO & ASPERO, LOWELL W. TAYLOR, Memphis, for plaintiffs in error.

LEO BEARMAN, SR., and LEO BEARMAN, JR., BEARMAN & BEARMAN, EDWARD W. KUHN, McDONALD, KUHN, McDONALD, CRENSHAW & SMITH, Memphis, for defendants in error.

MR. JUSTICE BURNETT delivered the opinion of the Court.

In this case certiorari has heretofore been granted. In granting the certiorari counsel were requested to limit their argument to answer the question proposed in a memorandum to them as to whether or not the rule as annunciated in *Smith v. Tucker,* 151 Tenn. 347, 270 S.W. 66, 41 A.L.R. 830, should be modified so as to make the exception as set forth in Restatement of the Law, Torts, Section 353, applicable when the facts meet the test as set forth in this latter exception to the rule. Argument has now been heard, briefs filed, and after much thought and consideration and investigation we are ready to determine the matter.

In April, 1958, Mr. and Mrs. Joseph A. Parker contracted to purchase a house and lot in Shelby County for $13,000 on which they paid $500 down as earnest money and agreed to make application for an F.H.A. loan for $12,000 through a local banking house in Memphis. The agreement provided that if the purchaser could not qualify for the F.H.A. loan then his earnest money should be refunded to him.

Mr. and Mrs. Parker desired to move into this property prior to the approval of this loan, they having sold their home that they then lived in, and the Development Company agreed to their moving into this property prior to the closing of the loan and delivery of the deed upon a condition that Mr. and Mrs. Parker sign a letter, which was dated May 29, 1958, and on which date they moved into the property, providing among other things that: ''We fully understand that we are not occupying this house at tenants but as purchasers under contract.'' Two days after moving into this house, to-wit, on May 31, 1958, while the daughter of Mrs. Parker and the step-daughter of Mr. Parker, Miss Belote, was taking summer things to the attic of the house for storing she fell from the attic of this newly constructed residence through an opening left for an attic fan down some nine feet to the floor below and thus received injuries for which this suit was brought. The trial judge, after the conclusion of the plaintiff's proof, sustained a motion for a directed verdict. This holding of the trial judge was affirmed by the Court of Appeals. The directed verdict was based on the rules as set forth in *Smith v. Tucker*, supra, which is as between vendor and vendee of real estate that once the vendee has taken possession, the vendor of the real estate is not subject to liability for bodily harm caused to the vendee or to

others while upon the premises by any dangerous condition, whether natural or artificial, which existed at the time the vendee took possession. This rule was first annunciated by this Court in *Smith v. Tucker,* supra, (1925), and as shown by an annotation in 8 A.L.R.2d, beginning at page 218, and in various texts on torts, such as 2 Harper & James, Law of Torts, Section 27.18, page 1518, and Prosser, Torts (2 Ed., 1955), Section 79, page 462, is of universal application under factual situations meeting the above stated principle. In other words, the doctrine of *caveat emptor* applies as between vendor and vendee to any proposed liability after a vendee has purchased real estate from a vendor.

The gravamen of the petition herein, as it was in the Court of Appeals, is an attempt to show that the relationship of vendor and vendee had not been established because the contract of purchase had not been completed. The loan had not been approved and various things of that kind completed. It is thus sought to establish the relationship of liability on the vendors of this property by analogy to landlord and tenant cases wherein the landlord has been held liable over the years in this State to the tenant for injuries resulting from a dangerous condition created by him. See a collection of authorities as set forth in *Boyce v. Shankman,* 40 Tenn.App. 475, 292 S.W. (2d) 229. Upon examination of the cases (and there are many) the courts though have uniformly rejected this attempt to establish liability. We think here the Court of Appeals is correct in rejecting this theory and analogy under the facts as above set forth in this case, and particularly in view of a portion of the letter that the vendees signed when they moved into this property.

This now brings us to an exception to the rule as set forth in *Smith v. Tucker,* supra, above set out, which is that the vendor is liable in his failure to disclose a dangerous condition known to him, where he should have realized that the vendee could not know and probably would not discover the condition or its potentiality for harm. The authors of the Restatement of the Law, Torts, put the rule in this fashion:

"A vendor of land, who conceals or fails to disclose to his vendee any condition whether natural or artificial involving unreasonable risk to the person upon the land, is subject to liability for bodily harm caused thereby to the vendee and others upon the land with the consent of the vendee or his subvendee, after the vendee has taken possession, if

"(a) the vendee does not know of the condition or risk involved therein, and

"(b) the vendor knows of the condition and the risk involved therein and has reason to believe that the vendee will not discover the condition or realize the risk." Section 353, pages 961 and 962.

The basis for liability in such a case is something like fraud in permitting the vendee and those whom he allows on the premises to enter in the face of a concealed and undisclosed hazard and, as Prosser puts it (Section 79, Page 463), "because the risk to the vendee is clearly great in proportion to the relatively slight burden of disclosure cast upon the vendor."

This exception, which certainly is reasonable and just, was first annunciated by the New York Court of Appeals in *Kilmer v. White,* 254 N.Y. 64, 171 N.E. 908, 909, 910.

Other courts have likewise recognized such an exception as *Palmore v. Morris,* 182 Pa. 82, 37 A. 995, 999, 61 Am. St.Rep. 693, wherein that court said:

> "There may be a case where the grantor conceals from the grantee a defect in a structure, known to him alone, and not discoverable by careful inspection, that the owner would be held liable, though out of possession; * * *"

The Pennsylvania case noting there might be such an exception was written in 1897. The New York case was written in 1930 after *Smith v. Tucker,* supra.

■ Section 352, page 961 of Restatements, supra, immediately precedes Section 353, above quoted, and Section 352 sets forth in a little different language exactly what we have heretofore said was the holding by this Court in *Smith v. Tucker,* supra, and what is the general rule over the country. Section 352 gives this general rule subject to the exception of Section 353 above copied. Thus we are alined with this general rule, but we have not had heretofore a state of facts submitted to us wherein the exception as set forth in subdivision (b) of Section 353 of the Restatement, supra, might be applicable. Thus it is a question of whether or not when the facts present themselves should we adopt this exception to the general rule. In the discussion of Section 353 of the Restatement, supra, of clause (b) the authors of this excellent work use language which seems to us, in logic and justice, inescapable when the facts present themselves. The author of that work on page 963 of Restatement of the Law, Torts, says among other things:

> "A vendor, therefore, is not required to exercise care to disclose dangerous conditions or to have an

ordinarily retentive memory as to their existence, *unless* the condition is one which such an inspection by the vendee would not discover or, although the condition would be so discovered, the vendor realizes the risk involved therein and has reason to believe that his vendee will not realize it. On the other hand, if the vendor actively conceals the condition, *by painting it over or otherwise,* or deliberately states that the land is in safe condition when he knows it to be dangerous or deliberately fails to disclose a condition which the vendor believes that the vendee neither knows nor will discover, although an inspection would disclose it, he is not entitled to assume that the vendee will discover it before throwing the land open to others."

When a vendor does these things clearly he should be liable.

Of course, a fact situation is thus developed in each case as to whether the vendor conceals a dangerous condition known to him in the ways, etc., indicated in the quotation above and others, and where such a condition might be considered in the nature of an active fraud in an effort to procure a quick sale. As was said many years ago by this Court, under circumstances of the kind, "The ground of liability upon the part of landlord when he demises dangerous property, has nothing special to do with the relation of landlord and tenant. *It is the ordinary case of liability for personal misfeasance,* which runs through all the relations of individuals to each other." (Emphasis ours.) *Wilcox v. Hines,* 100 Tenn. 538, 549, 46 S.W. 297, 299, 41 L.R.A. 278, 66 Am.St.Rep. 770. In other words, the principle under which this exception is based is not upon any relationship whatsoever, whether

vendor and vendee, landlord and tenant or whatnot, but on the rights and duties of man to man.

This brings us to the facts of the instant case. We quote a few paragraphs from the findings of the Court of Appeals as to these facts which are succinctly and well stated, and state what the record shows when applied under the motion for a directed verdict. The Court of Appeals says:

"The attic fan had never been installed and the opening was covered both on the top side and on the bottom side. On the bottom or ceiling side of the opening there was a piece of plywood or fiber board painted to fit in with the decor of the room resting upon a flat piece of molding which was in the same shape of the opening. The attic was floored and the workman had covered the opening on the attic side with loose slats of wood and some non weight-bearing material such as sheet-rock, all laid flush with the floor of the attic without any guard rails or other warnings of this dangerous condition to persons walking in the attic."

"From the proof in the record there is no question but that the workman who covered the opening on the attic side with loose wooden boards and non weight-bearing materials flush with the other portion of the attic floor was guilty of gross negligence and in effect created a dangerous trap for any person who might thereafter have occasion to be in the attic for any purpose. This residence was one of a number of similar residences built in the same neighborhood by the defendant, Memphis Development Company, for resale. There is no proof that any official of the Memphis De-

velopment Company had actual knowledge that the workman had created this dangerous condition in the attic. Plaintiffs did testify that the sales agent, Mr. Rogers, when showing them the house for sale, made an express oral guarantee to them that the entire floor of the attic was safe for them or any member of their family to walk on and use to store their clothes.''

''Access to the attic was obtained by a let down or disappearing stairway and Mr. Parker at the time of the contract to purchase inspected the attic only by walking up the stairway sufficiently far to get his head slightly above the floor of the attic and to get a general view of the attic. He made no further inspection of the floor of the attic but relied upon the representations made to him by the salesman, Mr. Rogers, that the attic was floored and safe to walk on.''

■ Clearly under such a factual situation at this stage of the case it must be presumed that the builders had knowledge of this trap, because the house was built by their workmen and no guard or anything placed around it, and then a jury could believe the Parkers, that this misrepresentation was made to them by the sales agent, that there was nothing wrong with it. Thus under such a factual situation it presented a question to go to the jury for their determination thereof.

■ One other assignment is made here as to the admissibility of certain evidence that Miss Belote was fired or relieved from her job because she had headaches with the assumption that these headaches were brought about by this fall. There are two or three reasons why this error must be overruled. In the first place the evidence isn't set forth as objected to for our determination, and in

the second place the question of whether or not she had headaches is a fact question to be presented to the jury through other means, and as to why somebody fired her from her job is not the question, but she can testify that she had these headaches and this evidence in another way might be presented to the jury but not the fact that the man had fired her because of headaches.

We have been very much interested in our research and work on this matter and the able and excellent briefs and arguments presented herein, and after having spent some days on this we are constrained to hold that the lower courts were in error and that the verdict should not have been directed for the defendants, because the exception to the rule, under which said verdict was directed, should be applicable to a factual situation of the kind. The costs of the appeal are taxed against the defendants in error. The costs below will await the outcome there.