Charles MORROW, et al.,
Plaintiffs-Appellees,

v.

Marie Smith THOMPSON,
Defendant-Appellant.

Court of Appeals of Tennessee,
Middle Section.

Oct. 27, 1981.

Permission to Appeal Denied by Supreme
Court Jan. 25, 1982.

James Walton, Springfield, for plaintiffs-appellees.

David E. Brandon, Nashville, for defendant-appellant.

## OPINION

TODD, Presiding Judge, Middle Section.

This suit was filed by the administrator of the estate of Robert (Bob) Smith, deceased, and a sister of the deceased to sell real estate of the deceased to pay debts and to determine the lawful heirs of the deceased.

The Chancellor found that there were no unsatisfied debts of the estate and dismissed the administrator's suit for sale. Chancellor further determined the heirs of deceased to be Marie Smith Thompson and Opal Smith Woodard, daughters of deceased; and that each was the owner of a one-half interest in the subject real estate.

The opinion of the Chancellor states:

The specific question to be answered by the Court in this cause is whether Opal Smith Woodard was in fact a child of the deceased Bob Smith; if and, in fact, the deceased did recognize her as his child. This contest joined in opposition the claim of Marie Smith Thompson and the claim of Opal Smith Woodard. Neither of these persons was born in wedlock as a child of the deceased; but it was agreed and stipulated that Marie Smith Thompson was, in fact, a child of the deceased and her claim to being such was not placed in dispute. Mrs. Thompson did dispute the claim of Opal Smith Woodard as to her being a child and held out to be such of the deceased Bob Smith.

. . . .

In 1978 the Tennessee legislature provided that a person born out of wedlock is a child of his father as well as his mother if "paternity is established by adjudication before the death of the father or is established thereafter by clear and convincing proof . . ." (Public Acts, 1978, Chapter 763, Section 3). The measuring stick for determination of the paternity for the purpose of intestate succession is that the claimant must show by clear and convincing proof that he or she is the child of the deceased.

This Court has reviewed all of the testimony introduced at this trial and the evidence is abundant that Opal Woodard not only is a child of the deceased Robert (Bob) Smith; but that Bob Smith during the life of Mrs. Woodard did claim her as his child. Taking into consideration the statements of the near kin of Bob Smith that Mrs. Woodard was his child, the statements of kin and others that Mr. Smith displayed affection and care for Mrs. Woodard and she in like kind; and that Mrs. Woodard was in the proximity of Mr. Smith visiting and caring for him during a portion of his life, then the Court must conclude that this is clear and convincing proof that Opal Woodard is in fact the child of the deceased Bob Smith.

Marie Smith Thompson has appealed. Her first issue on appeal is as follows:

1. Did the Trial Court err in allowing the introduction of hearsay evidence as to pedigree, in that at no time was foundation layed as to whether or not the witness/declarant was a disinterested party, and that there was no apparent motive for the witness/declarant to misrepresent the facts?

Rule 6A of the Rules of this Court is as follows:

(a) Written argument in regard to each issue on appeal shall contain:

1. A statement of the alleged erroneous action of the trial court which raises the issue, with citation to that part of the record where the alleged erroneous action is recorded.

2. A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

3. A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

Only two sentences of the argument furnish any insight into the basis of the first issue. Said sentences are as follows:

Topsy Dunbar, Opal Woodard, Viola Husky, and Ann Ross, all are personally interested witnesses whose testimony for this reason should be considered by the trier of fact. (RA p. 1 & 2). All were listed as possible claimants in the original Petition.

■ The argument relies upon certain facts presented by appellant with her motion for new trial, but an objection which should have been presented and supported with facts during the trial cannot be presented or supported with facts after the trial.

The meaning of the expression (RA P. 1 & 2), in the above quotation is unclear. If it is intended to refer to the transcript of the evidence, neither page 1 nor page 2 thereof contain any testimony of the named witnesses.

The testimony of Topsy Dunbar extends from page 3 to page 18 of the transcript. The testimony of Viola Husky occurs on pages 31–33. The testimony of Ann Ross occurs on pages 33–35. Not a single objection is recorded on these pages of the transcript. The transcript records no subsequent trial motion to strike any of the testimony in question.

■ A complaint of erroneous admission of evidence will not be considered on appeal where no objection was made at the trial. *Belote v. Memphis Development Co.*, 208 Tenn. 434, 346 S.W.2d 441 (1961); *Baker v. Baker*, 60 Tenn.App. 545, 448 S.W.2d 677 (1969).

The first issue is without merit.

The second issue presented by appellant is as follows:

2. Did the Trial Court err by denying appellant's motion for new trial, with attached affidavits, indicating that the witnesses were interested parties, or prejudice to the appellant?

The argument of appellant refers this Court to pages 30, 31 and 32 of the (technical) record. On page 30 is found the affidavit of appellant as follows:

I, Marie Smith Thompson, after being duly sworn, make oath as to the following:

1. That all the witnesses appearing in trial on March 10, 1980, in this matter were either directly interested in the outcome of the lawsuit or were for some reason conspiring so that the other interested persons would prevail.

On page 31 is found another affidavit of appellant as follows:

I, Marie Smith Thompson, after being duly sworn, make oath as to the following:

1. That W. D. Crowder is the pastor of Opal Woodard.

2. That Robert Woodard, the husband of Opal Woodard, died and was buried by W. D. Crowder. This was W. D. Crowder's first employment as a mortician upon his arrival in Springfield, Tennessee. The affiant believes that W. D. Crowder for the reasons listed above, is indebted to Opal Woodard and is merely trying to assist her by favorable testimony.

3. Additionally, W. D. Crowder may be resentful towards Marie Smith Thompson, in that Virgil Parham was chosen as the mortician for the late Robert Smith rather than W. D. Crowder. Again, it appears to the affiant that W. D. Crowder is resentful towards Marie Smith Thompson for these reasons.

On page 32 is found a third affidavit of appellant as follows:

That Austin Pendleton sold insurance to my father, Robert Smith. That Austin Pendleton appeared at the residence of Robert Smith one day and did collect an insurance premium from Robert Smith. It was my father's and my understanding that this premium was for the payment of fire insurance on the house. I inquired of Austin Pendleton as to the fire insurance policy, and he informed me that the premium payment was for hospitalization or similar insurance policy with Opal Woodard as beneficiary. I immediately directed that this was to cease and that no further insurance would be paid for the benefit of Opal Woodard. From that time on Austin Pendleton has been resentful of me and against me. This incident also makes me believe that Austin Pendleton is in concert with Opal Woodard to make her an heir to my father's property.

Such affidavits could have no possible usefulness in this case except in support of a motion for new trial on grounds of newly discovered evidence. The new trial motion is not based upon newly discovered evidence. There is nothing to indicate why the evidence in the affidavits was not offered at the trial. *Frazier v. McFerrin*, 55 Tenn.App. 431, 402 S.W.2d 467 (1964). Therefore, the affidavits present no ground for new trial.

The second issue is without merit.

Appellant's third, and final, issue is as follows:

3. Does the evidence as a whole, presented at trial, meet the requirement of *clear and convincing proof*, as stated in *Allen v. Harvey*, Supra.?

In *Allen v. Harvey*, Tenn.1978, 568 S.W.2d 829, the Supreme Court reversed this Court and held that an illegitimate had been "legitimated" under T.C.A. § 31–206(2)(b) and was entitled to inherit and said:

Although we think that a child born out of wedlock must meet a stricter or higher standard of proof of paternity than is required for a child born within wedlock, denial of an inheritance to a child whose father openly and consistent-

ly acknowledged the father-child relationship and who lived with the child and provided for his support would, in our opinion, deprive the child of his inheritance "unnecessarily" as forbidden by *Trimble* and would also belie the "reason" that is the strength of the common law.

■ The decision we reach today—that a child born out of wedlock may inherit from and through his father—is specifically limited to cases where paternity is established by clear and convincing proof and to cases where rights of inheritance have not finally vested. . . .

The Chancellor succinctly summarized the evidence as follows:

Opal Mai Woodard was born on August 24, 1919 in Logan County, Kentucky. Her mother was Willie Mae Wills and she was reared by her mother there in Kentucky. Mrs. Woodard's natural mother later married J. C. Smith, a nephew of the late Bob Smith. Mrs. Woodard related that the deceased, Bob Smith, personally told her that he was her father and on occasions he gave her presents on her birthday and at Christmas time. She stated that Bob Smith moved to Springfield in 1970 and resided at 1710 Richardson Street. After 1970 she recalled that Mr. Smith was in good health and that from time to time she went to his place and cleaned it up, took him food and helped care for him. On October 13, 1977, she knocked on the door and found her father in the floor. She and Topsy Dunbar then took him to the hospital and she stayed with him until October 15, 1977. According to her recollection Marie Thompson stayed with him from the 15th of October to November the 5th. Mr. Smith then went to Marie Thompson's home on November the 5th and there he died on November 13, 1977. Once again Mrs. Woodard stated that Bob Smith had told her he was her father and at times he acted towards her like a father. Mrs. Woodard said that she lived in Logan County until she was eight years of age.

Topsy Dunbar, a sister of the deceased Robert Smith, testified, that she knew both Opal Woodard and Marie Thompson from birth. She stated they were both born in Kentucky and that Willie Mai Wills was the mother of Mrs. Woodard. Her statement was that Robert Smith always gave things to Opal and that Mrs. Woodard had helped him out until he died. It was her recollection that on every occasion that she had seen Robert Smith that Opal Woodard was there; and Bob Smith always claimed Opal Woodard was his daughter.

Mr. Austin Pendleton, the manager of Interstate Life Insurance Company, said he knew Bob Smith because he carried insurance on Mrs. Opal Woodard. He asked Mr. Smith to carry some insurance on himself and at that time Bob Smith told him he was carrying insurance on his daughter, Opal Woodard.

Mr. W. D. Crowder, a resident of 1800 Richardson Street in Springfield, Tennessee, said that he knew Opal Woodard, Marie Thompson and Mr. Bob Smith. His statement was that Bob Smith told him that Opal was his daughter; and he recalls seeing Opal go to Bob Smith's home carrying things from time to time. Bob Smith told him that he had two daughters, Opal Woodard and Marie Thompson.

Viola Hooks (Husky), a resident of Auburn, Kentucky knew Mr. Bob Smith, as he was her one-half uncle. She stated that when Opal was born she was living in Kentucky and lived on the adjoining farm with Bob Smith. At that time Bob Smith claimed Opal and Marie were his daughters. And she remembered that Bob was always giving Opal things and being nice to her.

Annie B. Rooks (Ross), a resident of Springfield, Tennessee, testified she knew Bob Smith as he was her uncle. She also knew Opal Woodard and Marie Thompson and recalled Bob Smith saying that Opal was his daughter. Her statement was that Bob Smith had claimed Opal as his daughter since she was a little tot and lived on the adjoining farm.

Marie Thompson testified she knew Opal Woodard and that Bob Smith had

told her that Johnny Goff was the father of Opal. She stated she was very close to her father, Bob Smith, and that he never alluded to Opal Woodard being his daughter. Marie Thompson said she lived on an adjoining farm to Bob Smith and lived with another family. She did not stay with her father but helped set his tobacco and that when Opal did things for Mr. Smith he paid her for that help.

The evidence just cited was and is adequate to legitimize for inheritance purposes under T.C.A. § 31–206(2)(b) and *Allen v. Harvey, supra.* The finding of the Chancellor comes to this Court with a presumption of correctness unless the evidence preponderates otherwise. T.R.A.P. Rule 13(d), T.C.A. § 27–3–103. The evidence does not preponderate otherwise.

The third issue is without merit.

The decree of the Chancellor is affirmed. All costs of this appeal are taxed against appellant. The cause is remanded for such further proceedings, if any, as may be necessary and proper.

Affirmed and remanded.

LEWIS, and CANTRELL, JJ., concur.