Rogers N. HAYS, Appellee,

v.

James R. GILLIAM, Appellant.

Court of Appeals of Tennessee, Middle Section at Nashville.

May 5, 1983.

Permission to Appeal Denied by Supreme Court July 25, 1983.

159

Thomas W. Hardin, Columbia, for appellant.

Jerry W. Wallace, Pulaski, for appellee.

## OPINION

TODD, Presiding Judge, Middle Section.

The plaintiff, Rogers N. Hays, brought suit against the defendant, James R. Gilliam, for breach of express warranties, implied warranty of habitability, and negligent misrepresentation in the sale of a building containing six one-bedroom apartments. The chancellor found no express warranties existed, but that Gilliam had breached the implied warranty of habitability and awarded Hays damages of $4,250.12. Defendant appealed.

In 1960, a single family dwelling on the property was constructed on the premises. In 1975, the dwelling was destroyed by fire, and defendant undertook to rebuild the structure as a six apartment building. He continued to make modifications up to May, 1980, the time of purchase by Hays, when the six apartments were substantially complete and most of the apartments had been occupied for some time. The written sales contract contained no representations or warranties regarding condition or fitness of the premises, and the parties agree that no such oral representations or warranties were made.

After taking possession, Hays began to receive complaints from tenants that sewage was backing up into shower units. Hays then had the sewage system inspected on June 1, 1981 and it was discovered that the sewage tank was 750 gallons in capacity and what was needed was 2,250 gallons. It was also determined that the field line system was inadequate.

It was also discovered that the wiring in one of the apartments was inadequate, causing an overloaded plug to burn out.

The chancellor's award of damages included the following:

| $ 75.00 | — Check payable to W.J. Yance Co. for pumping septic tank. |
| $ 66.12 | — Check payable to Pulaski Electric for apartment work. |
| $1,310.00 | — Check payable to Joe E. Smith for septic tank repair. |
| $ 49.00 | — Electrical work resulting from improper installation of electric plug in garage apartment. |
| $ 800.00 | — Expected expenses of 1,500 gallon tank. |
| $1,950.00 | — Expected expense of field lines. |

Appellant presents the following issues:

Whether under the facts and circumstances of this case an implied warranty

(of habitability) exists, and if so, the law applicable thereto.

Whether under the facts and circumstances of this case negligent misrepresentations exist, and if so, the law applicable thereto.

Appellee insists that there was an implied warranty of habitability, citing *Dixon v. Mountain Construction Co.,* Tenn.1982, 632 S.W.2d 538. In that case, the plaintiffs contracted with a builder to buy a residence *to be built thereafter.* The Supreme Court said:

We prefer to meet the issue head-on and align ourselves with those jurisdictions that recognize that the home buying public has a legitimate expectation that the workmanship and materials used by the builder-vendor in the construction of a dwelling will meet the standard of the trade for homes in comparable locations and price range and that such a warranty is implicit in the contract and survives the passing of title to the real estate and the taking of possession, as an exception to the doctrine of caveat emptor. (citing authorities) The rational for such an exception is well stated in *Pollard v. Saxe and Yolles Development Co., supra* [12 Cal.3d 374] 115 Cal.Rptr. [648] at 651, 525 P.2d [88] at 91 [1974].

"In the setting of the marketplace, the builder or seller of new construction—not unlike the manufacturer or merchandiser of personalty—makes implied representations, ordinarily indispensible to the sale, that the builder has used reasonable skill and judgment in constructing the building. On the other hand, the purchaser *does not usually possess the knowledge of* the builder and is unable to fully examine a complete house and its components without disturbing the finished product. Further, unlike the purchaser of an older building, he has no opportunity to observe how the building has withstood the passage of time. Thus, he generally relies on those in a position to know the quality of the work to be sold, and his reliance is surely evident to the construction industry."

(1, 2) In a factual situation similar to the instant case the North Carolina Supreme Court in *Hartley v. Ballou, supra* [286 N.C. 51, 209 S.E.2d 776 (1974)], noting the trend of decisions as reflected in the annotation in 25 A.L.R.3d 383, adopted the following implied warranty:

"(w)e hold that in every contract for the sale of a recently completed dwelling, and in every contract for the sale of a dwelling then under construction, the vendor, if he be in the business of building such dwellings, shall be held to impliedly warrant to the initial vendee that, at the time of the passing of the deed or the taking of possession by the initial vendee (whichever first occurs), the dwelling, together with all its fixtures, is sufficiently free from major structural defects, and is constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction; and that this implied warranty in the contract of sale survives the passing of the deed or the taking of possession by the initial vendee." Id. 209 S.E.2d at 783.

We adopt that implied warranty rule in this State and in accord with the factual situation in the present case hold that it shall also apply where, at the time the contract is entered into, a dwelling is to be constructed by the builder-vendor.

█ The cited authority did recognize an exception to the general rule of caveat emptor, but the exception was applied only to purchasers of newly built dwellings from builders or purchasers of dwellings to be built by builders. The authority does not create or declare an implied warranty in the sale of premises where an apartment building had been under construction for five years. The structure had not been "recently constructed", nor was it a home. It had been a home but, by fire and reconstruction, it had become an apartment building. The fact that certain recent modifications were not entirely complete does not convert the entire structure into "recent construction". Moreover, the purchaser of an apartment

house is not a "naive home buyer", but an investor in a commercial enterprise.

■ Appellee insists that it has rights because the original septic tank and disposal system did not conform to proper standards for a single family structure and, not having been enlarged to accommodate the 6 apartments, it was grossly inadequate. These facts would be grounds for liability in the present case if the sale of a 20 year old residence includes an implied warranty of an acceptable sewerage system, or if a sale of a 5 year old recently modified apartment house includes an implied warranty of an adequate sewerage system. This Court finds no authority for such a rule in Dixon or elsewhere.

This case presents a situation wherein the investor-buyer could and should have made specific inquiry as to the sewerage facilities and/or any other construction which could not be examined. He could and should have required written assurances as to such hidden conditions as a condition to the purchase of the property. If the assurances had proven false, plaintiff would have his remedy. If the conditions were correctly represented, the parties may have proceeded to bargain as they did, or they may have bargained for a different price, or they may not have reached a bargain at all. It is not for this Court to speculate as to what the parties might have done or to make for them a bargain different from that which they struck.

If the courts undertake to establish implied warranties on used buildings, especially multi-family buildings bought for investment, they will enter a morass of controversy and uncertainty through which no clear, reliable road may be charted.

■ Nevertheless, appellee insists that there is liability for negligent misrepresentation. As stated above, there was no representation.

Appellee first cites *Belote v. Memphis Development Co.*, 208 Tenn. 434, 346 S.W.2d 441 (1961). In that case, the daughter of a purchaser fell through a covered opening in the attic of a home built by and sold by the defendant. In a suit for personal injuries, the Supreme Court held that a vendor may be liable for personal injuries as a result of a dangerous condition known to the vendor and concealed by him. The condition was characterized as a "trap". This Court does not understand that liability for personal injury under such circumstances is comparable or analogous to liability for the cost of alterations to correct a defect. For example, in *Belote,* it does not appear that a recovery was sought for closing the opening.

Appellee also cites *Cooper v. Cordova Sand and Gravel, Inc.,* Tenn.App.1971, 485 S.W.2d 261. In that case, this Court found that the defendants falsely represented the lot had been filled and compacted to engineering standards. No express representations are shown in this record.

■ The facts of this case fall squarely within the rule of caveat emptor unless the existing exception is to be broadened to include non-residential, used structures. Such broadening is the province of the Supreme Court or the Legislature and not of this Court.

The judgment of the Trial Court is reversed, and plaintiff's suit is dismissed. All costs, including costs of this appeal are taxed against plaintiff. The cause is remanded for collection of costs and such other proceedings, if any, as may be necessary and proper.

Reversed, Dismissed and Remanded.

CANTRELL and CONNER, JJ., concur.