**Shelia FRIEND, Plaintiff-Appellant,**

v.

**METROPOLITAN GOVERNMENT FOR NASHVILLE-DAVIDSON COUNTY, Tennessee, R.K. Kelley, Individually, Haywood Hills Joint Venture, Parrish-Ragan, Inc., Wayne Williams Property Management, Inc., Nona J. Rudesill, Gardenview Properties, and Frank D. Oster, Defendants,**

and

**Richard Rudesill, Defendant-Appellee.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Feb. 7, 1986.

Application for Permission to Appeal
Denied by Supreme Court
April 21, 1986.

Charles A. High, Jr., Grissim & Hodges and Charles Galbreath, Galbreath, Bell & Dowden, Nashville, for plaintiff-appellant.

Angus Gillis, III, Schulman, LeRoy, & Bennett, P.C., Nashville, for defendant-appellee Richard Rudesill.

## OPINION

TODD, Presiding Judge, Middle Section.

The plaintiff, Shelia Friend, has appealed from a summary judgment dismissing her suit against the defendant, Richard Rudesill, for wrongful death of plaintiff's husband and two minor children by drowning. Other defendants were also dismissed but are not involved in this appeal.

On June 2, 1981, plaintiff's husband and two children were drowned in a flooded culvert near their home. Plaintiff's second amended complaint alleges that the culvert was part of a drainage system which has been maintained since its construction by defendant-appellee, Rudesill, that (verbatim):

Defendants, R.K. Kelley, Gardenview Properties, W.W. Property Management and Nashville are jointly responsible for maintenance of said culvert;

that the culvert system was negligently designed and constructed by Rudesill (and others) and it was unreasonably dangerous; and (verbatim):

The actions of the defendants (not named) in failing to warn of a known and serious risk of harm constitutes flagrant indifference to the public safety and legal malice.

The answer of Rudesill denied present ownership of the land involved in the suit and pled the bar of TCA 28–3–202, 203 which reads as follows:

Limitation of actions.—All actions to recover damages for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property, for injury to property, real or personal, arising out of any such deficiency, or for injury to the person or for wrongful death arising out of any such deficiency, shall be

brought against any person performing or furnishing the design, planning, supervision, observation of construction, construction of, or land surveying in connection with, such an improvement within four (4) years after substantial completion of such an improvement. [Acts 1965, ch. 353, § 1; 1980 (Adj. S.), ch. 811, § 1; T.C.A., § 28–314.]

Injury during fourth year after completion—Limitation of action.—(a) Notwithstanding the provisions of § 28–3–202, in the case of such an injury to property or person or such injury causing wrongful death, which injury occurred during the fourth (4th) year after such substantial completion, an action in court to recover damages for such injury or wrongful death shall be brought within one (1) year after the date on which such injury occurred, without respect to the date of death of such injured person.

(b) Such action shall, in all events, be brought within five (5) years after the substantial completion of such an improvement. [Acts 1965, ch. 353, § 2; T.C.A., § 28–315.]

By subsequent answer, Rudesill, alleged modifications to the culvert after his ownership, contributory negligence and independent intervening cause.

Rudesill moved for summary judgment on grounds of the above quoted statute and lack of any duty to deceased as former owner.

The affidavit of Rudesill states:

Prior to March 31, 1977, my wife, Nona Rudesill, and I were the owners of record of four tracts of real property in Nashville, Tennessee, known as 4159, 4161, 4165 and 4169 Apache Trail. The accident which is the subject of this lawsuit occurred on this property. My former wife and I sold all four tracts on March 31, 1977. A copy of the deed is attached hereto as Exhibit A. My wife and I have had no interest of any nature in the property since that date. I was unaware of any latent dangerous condi-

tion with respect to the culvert in question.

The judgment under review states:

... [T]he Court is of the opinion that the applicable statute of limitations contained in T.C.A. § 28-3-202 bars the plaintiff's action against this defendant and is further of the opinion that this cause should be dismissed as to this defendant pursuant to the principles enunciated in the case of *Belote v. Memphis Development Company,* 208 Tenn. 434, 346 S.W.2d 441.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that this cause is dismissed as to the defendant, Richard Rudesill,....

Appellant's issues on appeal are as follows:

I. Summary judgment was improperly granted for Defendant, Richard Rudesill.

A. Tennessee Code Sections 28-3-201, *et seq.*, are not applicable to the Defendant. Defendant, Rudesill, is not entitled to judgment as a matter of law based on the statute cited.

B. A genuine issue exists as to whether the Defendant, Richard Rudesill, is liable to Plaintiff for the wrongful deaths of her family members. The material facts create a jury question as to Defendant's liability as a vendor of real estate under Section 353, *Restatement of the Law, Torts.*

II. T.C.A. § 28-3-201, *et seq.*, are unconstitutional.

Appellant first insists that TCA § 28-3-201 et seq. are not applicable to defendant, Rudesill. As stated above, plaintiff's suit against Rudesill is based upon an allegation that Rudesill negligently designed and constructed the drainage system and that he has "maintained" it since its construction.

There is evidence that the drainage system was constructed during the ownership of the land by Rudesill. Rudesill testified that he thought the construction was performed by Hardaway Construction Company. However, appellant insists that Rudesill is responsible for failing to see that the drainage system was properly designed and constructed.

The evidence is uncontroverted that Rudesill had no interest in the property at the time of the tragedy. There is no evidence that he was "maintaining" the drainage system at the time of the tragedy.

It thus appears that the only basis of liability of Rudesill shown by the evidence is negligently constructing or negligently supervising the construction of the drainage system.

T.C.A. § 28-3-202, quoted above, requires that all actions to recover for deficiencies in design, planning, supervision, observation of construction or construction of an improvement to real property must be brought against any person performing or furnishing design, planning, supervision, observation of construction or constructing an improvement within 4 years after completion of the improvement.

It is uncontroverted that, on March 31, 1977, when Rudesill sold the property, all on-going construction thereon was complete, that he was unaware of any defect in the drainage at that time and that he has had no connection with the property since March 31, 1977. The limitation provided by § 28-3-202 began to run on or before March 31, 1977, at the completion of the work began during Rudesill's ownership.

The record before this Court does not contain the complaint originally filed in this case, hence the date of filing this suit cannot be ascertained from the record. However, the date of the occurrence giving rise to the suit is stated in the amended complaint as June 2, 1981. This date being more than four years after March 31, 1977, the date of filing this suit must, perforce be more than four years after March 31, 1977.

Appellant asserts that there is no testimony or affidavit in the record that Rudesill "performed or furnished" any of these services on the property. However, any liability for deficiency or defect in construction must be based upon the negligent fail-

ure to properly construct or to see that others properly constructed the drainage. In this respect, the suit is based upon a deficiency in design, planning, supervision, observation or construction by Rudesill while he owned the property.

Appellant next argues that liability of Rudesill is not premised upon his construction of the culvert, but upon his failure to inform his vendee of a dangerous condition *that he was responsible for creating.* It is seen that the premise stated by appellant includes the responsibility for creation of the defect.

Appellant cites *Belote v. Memphis Development Company* 208 Tenn. 434, 346 S.W.2d 441 (1961), which was decided before the enactment of § 28–3–202 in 1965. In *Belote* the daughter of the purchasers of a home fell through a covered opening in the attic. The Supreme Court reversed a directed verdict for the defendant and said:

... The authors of the Restatement of the Law, Torts, put the rule in this fashion:

"A vendor of land, who conceals or fails to disclose to his vendee any condition whether natural or artificial involving unreasonable risk to the person upon the land, is subject to liability for bodily harm caused thereby to the vendee and others upon the land with the consent of the vendee or his subvendee, after the vendee has taken possession, if

"(a) the vendee does not know of the condition or risk involved therein, and

"(b) the vendor knows of the condition and the risk involved therein and has reason to believe that the vendee will not discover the condition or realize the risk." Section 353, pages 961 and 962.

The basis for liability in such a case is something like fraud in permitting the vendee and those whom he allows on the premises to enter in the face of a concealed and undisclosed hazard and, as Prosser puts it (Section 79, Page 463), "because the risk to the vendee is clearly great in proportion to the relatively slight burden of disclosure cast upon the vendor."

. . . .

"There may be a case where the grantor conceals from the grantee a defect in a structure, known to him alone, and not discoverable by careful inspection, that the owner would be held liable, though out of possession; ..."

. . . .

... [P]age 963 of Restatement of the Law, Torts, says among other things:

"A vendor, therefore, is not required to exercise care to disclose dangerous conditions or to have an ordinarily retentive memory as to their existence, *unless* the condition is one which such an inspection by the vendee would not discover or, although the condition would be so discovered, the vendor realizes the risk involved therein and has reason to believe that his vendee will not realize it. On the other hand, if the vendor actively conceals the condition, *by painting it over or otherwise,* or deliberately states that the land is in safe condition when he knows it to be dangerous or deliberately fails to disclose a condition which the vendor believes that the vendee neither knows nor will discover, although an inspection would disclose it, he is not entitled to assume that the vendee will discover it before throwing the land open to others."

. . . .

Of course, a fact situation is thus developed in each case as to whether the vendor conceals a dangerous condition known to him in the ways, etc., indicated in the quotation above and others, and where such a condition might be considered in the nature of an active fraud in an effort to procure a quick sale....

. . . .

"The attic fan had never been installed and the opening was covered both on the top side and on the bottom side. On the bottom or ceiling side of the opening there was a piece of plywood or fiber board painted to fit in with the decor of the room resting upon a flat piece of

molding which was in the same shape of the opening. The attic was floored and the workman had covered the opening on the attic side with loose slats of wood and some non weight-bearing material such as sheet-rock, all laid flush with the floor of the attic without any guard rails or other warnings of this dangerous condition to persons walking in the attic."

"From the proof in the record there is no question but that the workman who covered the opening on the attic side with loose wooden boards and non weight-bearing materials flush with the other portion of the attic floor was guilty of gross negligence and in effect created a dangerous trap for any person who might thereafter have occasion to be in the attic for any purpose. This residence was one of a number of similar residences built in the same neighborhood by the defendant, Memphis Development Company, for resale. There is no proof that any official of the Memphis Development Company had actual knowledge that the workman had created this dangerous condition in the attic. Plaintiffs did testify that the sales agent, Mr. Rogers, when showing them the house for sale, made an express oral guarantee to them that the entire floor of the attic was safe for them or any member of their family to walk on and use to store their clothes."

. . . .

■ Clearly under such a factual situation at this stage of the case it must be presumed that the builders had knowledge of this trap, because the house was built by their workmen and no guard or anything placed around it, and then a jury could believe the Parkers, that his misrepresentation was made to them by the sale agent, that there was nothing wrong with it. Thus under such a factual situation it presented a question to go to the jury for their determination thereof. (208 Tenn. pp. 438–442, 346 S.W.2d 441)

It is seen that the decision in *Belote* was based upon the construction of the house by the defendant's employees, the creation and concealment of the trap by the employees of the defendant, the failure of defendant to disclose the trap to the purchaser whose daughter was injured, and the representation of the agent of defendant that the attic was safe. The distinctions between *Belote* and the present case are clear:

1. The present statutory limitation was not involved because it had not been enacted, and the injury occurred before the actual completion of the house.

2. *Belote* created a special exception to the doctrine of caveat emptor for cases of concealment of known dangers.

3. *Belote* included an overt representation of safety.

■ In the present case there is no evidence of a known or obvious danger. The defect alleged consisted of an abrupt change of direction of a culvert with a partial obstruction both of which were underground and not obvious or observable except by crawling into the culvert. No ill effects resulted from the alleged defect until debris lodged against the obstruction and/or the abrupt turn. The obstruction of flow by the debris resulted in a flooded condition at the entrance of the culvert where the stepchildren of the adult deceased were playing. In spite of the obstruction by the debris, there was sufficient current to sweep the children into the culvert and to trap the stepfather when he sought to rescue them.

The evidence of the nature of the defect is not such as to put Rudesill on notice of danger of the tragic results in this case. There is no evidence that the defect was in any way overtly concealed, as occurred in *Belote*. There is no evidence that any flooding or other malfunction occurred during Rudesill's ownership of the property such as would put him on notice of a dangerous condition.

No facts are shown which would bring this suit against Rudesill within the holding of *Belote*.

Appellant next insists that the statute of limitations was tolled because Rudesill "concealed the cause of action" as provided in TCA § 28–3–205. There is no evidence that Rudesill "concealed" the cause of action of plaintiff.

Appellant cites *Wallace v. KCDC*, Tenn. App. 1978, 568 S.W.2d 107. That case was an action for wrongful death from electrical shock due to faulty electrical construction. This Court affirmed a dismissal for failure to sue within 4 years of completion of the improvement as provided in T.C.A. § 28–314 (now § 28–3–202). The claim of concealment was rejected on the ground that the defect was fully visible and not concealed. In the present case, the alleged defect was concealed in the underground pipe, and it is undisputed that Rudesill did not know of the condition, and could not have known of the condition except by careful supervision of construction or a crawling inspection of the interior of the pipe. These facts do not evidence a fraudulent concealment which would toll the statute.

In *Albert v. Sherman*, 167 Tenn. 133, 67 S.W.2d 140 (1934), it was held that the fact that a dentist knew or should have known that he had left a root of an extracted tooth in his patient's mouth did not constitute fraudulent concealment to toll the statute of limitations.

In *Ray v. Scheibert*, 224 Tenn. 99, 450 S.W.2d 578 (1969), the Supreme Court recognized the rule announced in *Hudson v. Shoulders*, 164 Tenn. 70, 45 S.W.2d 1072 (1931) that, in order for the statute of limitations to be tolled by fraudulent concealment, the cause of action must be known to the defendant and must be concealed by him.

In *Clark v. American National Bank & Trust Co. of Chattanooga*, Tenn.App. 1974, 531 S.W.2d 563, it was held that, in the absence of a fiduciary relationship, concealment to toll the statute of limitations must be evidenced by some overt act.

The fact that a genuine issue of facts exists as to the liability of Rudesill to plaintiff is immaterial so long as no issue of facts exists as to the bar of the statute of limitations and this defendant is entitled to a judgment in his favor as a matter of law on the ground of the statute of limitations.

In respect to appellant's issue on the constitutionality of the statute, appellant's brief states:

Appellant will not brief this issue. The Supreme Court has held contrary to the Appellant in *Harmon v. Angus R. Jessup Assocs.*, 619 S.W.2d 522 (1981). Any argument for reversal of that precedent must be made to the Supreme Court. Plaintiff-Appellant merely seeks to preserve that issue in the event of further appeal.

The judgment of the Trial Court is affirmed at the cost of appellant. The cause is remanded to the Trial Court for collection of costs and any other proceedings which may be necessary and proper.

Affirmed and remanded.

LEWIS and KOCH, JJ., concur.